[S.F. No. 24851. Dec. 5, 1985.]

JACK KENDALL et al., Plaintiffs and Appellants, v.
ERNEST PESTANA, INC., Defendant and Respondent.

492

COUNSEL

Morgan, Morgan, Towery, Morgan & Spector, W. Robert Morgan and Barbara Spector for Plaintiffs and Appellants.

Fred Crane and Michael V. Hesse as Amici Curiae on behalf of Plaintiffs and Appellants.

Frank P. Nicoletti and Tiernan & Nicoletti for Defendant and Respondent.

Pillsbury, Madison & Sutro, Walter R. Allan, Vaughn R. Walker and Christopher R. Ball as Amici Curiae on behalf of Defendant and Respondent.

OPINION

BROUSSARD, J.—This case concerns the effect of a provision in a commercial lease[1] that the lessee may not assign the lease or sublet the premises without the lessor's prior written consent. The question we address is whether, in the absence of a provision that such consent will not be unreasonably withheld, a lessor may unreasonably and arbitrarily withhold his or her consent to an assignment.[2] This is a question of first impression in this court.

---

[1] We are presented only with a commercial lease and therefore do not address the question whether residential leases are controlled by the principles articulated in this opinion.

[2] Since the present case involves an assignment rather than a sublease, we will speak primarily in terms of assignments. However, our holding applies equally to subleases. The difference between an assignment and a sublease is that an assignment transfers the lessee's entire interest in the property whereas a sublease transfers only a portion of that interest, with the original lessee retaining a right of reentry at some point during the unexpired term of the lease. (See *Hartman Ranch Co.* v. *Associated Oil Co.* (1937) 10 Cal.2d 232, 242-243 [73 P.2d 1163]; *Gilman* v. *Nemetz* (1962) 203 Cal.App.2d 81, 86 [21 Cal.Rptr. 317, 94 A.L.R.2d 1332].)

I.

This case arises on appeal from an order sustaining a demurrer without leave to amend.[3] ▌▌ We review the allegations of the complaint applying the established principle that a demurrer "admits the truth of all material factual allegations in the complaint. . . ." (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]; *Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213-214 [197 Cal.Rptr. 783, 673 P.2d 660].)

The allegations of the complaint may be summarized as follows. The lease at issue is for 14,400 square feet of hangar space at the San Jose Municipal Airport. The City of San Jose, as owner of the property, leased it to Irving and Janice Perlitch, who in turn assigned their interest to respondent Ernest Pestana, Inc.[4] Prior to assigning their interest to respondent, the Perlitches entered into a 25-year sublease with one Robert Bixler commencing on January 1, 1970. The sublease covered an original five-year term plus four 5-year options to renew. The rental rate was to be increased every 10 years in the same proportion as rents increased on the master lease from the City of San Jose. The premises were to be used by Bixler for the purpose of conducting an airplane maintenance business.

Bixler conducted such a business under the name "Flight Services" until, in 1981, he agreed to sell the business to appellants Jack Kendall, Grady O'Hara and Vicki O'Hara. The proposed sale included the business and the equipment, inventory and improvements on the property, together with the existing lease. The proposed assignees had a stronger financial statement and greater net worth than the current lessee, Bixler, and they were willing to be bound by the terms of the lease.

The lease provided that written consent of the lessor was required before the lessee could assign his interest, and that failure to obtain such consent

---

[3]No judgment of dismissal was entered by the trial court in this case. However, in the interests of justice and to prevent unnecessary delay, we will deem the order sustaining the demurrer to incorporate a judgment of dismissal and will interpret appellants' notice of appeal as applying to the dismissal. (See *Beazell* v. *Schrader* (1963) 59 Cal.2d 577, 580 [30 Cal.Rptr. 534, 381 P.2d 390]; *California State Employees' Assn.* v. *State of California* (1973) 32 Cal.App.3d 103, 106, fn. 1 [108 Cal.Rptr. 60]; *Wilson* v. *Household Finance Corp.* (1982) 131 Cal.App.3d 649, 652 [182 Cal.Rptr. 590].)

[4]The record does not reveal the dates or terms of these transactions.

rendered the lease voidable at the option of the lessor.[5] Accordingly, Bixler requested consent from the Perlitches' successor-in-interest, respondent Ernest Pestana, Inc. Respondent refused to consent to the assignment and maintained that it had an absolute right arbitrarily to refuse any such request. The complaint recites that respondent demanded "increased rent and other more onerous terms" as a condition of consenting to Bixler's transfer of interest.

The proposed assignees brought suit for declaratory and injunctive relief and damages seeking, inter alia, a declaration "that the refusal of ERNEST PESTANA, INC. to consent to the assignment of the lease is unreasonable and is an unlawful restraint on the freedom of alienation. . . ."[6] The trial court sustained a demurrer to the complaint without leave to amend and this appeal followed.

## II.

■ The law generally favors free alienability of property, and California follows the common law rule that a leasehold interest is freely alienable. (See *Kassan* v. *Stout* (1973) 9 Cal.3d 39, 43 [106 Cal.Rptr. 783, 507 P.2d 87]; 49 Am.Jur.2d, Landlord and Tenant, § 398 (1980).) Contractual restrictions on the alienability of leasehold interests are, however, permitted. (See *Kassan* v. *Stout, supra.*) "Such restrictions are justified as reasonable protection of the interests of the lessor as to who shall possess and manage property in which he has a reversionary interest and from which he is deriving income." (Schoshinski, American Law of Landlord and Tenant (1980) § 8:15, at pp. 578-579. See also 2 Powell on Real Property, ¶ 246[1], at p. 372.97.)

The common law's hostility toward restraints on alienation has caused such restraints on leasehold interests to be strictly construed against the lessor. (See Schoshinski, *supra,* § 8.16, at pp. 583-588; 2 Powell, *supra,* ¶ 246[1], at pp. 372.97, 372.100.) Thus, in *Chapman* v. *Great Western*

---

[5]Paragraph 13 of the sublease between the Perlitches and Bixler provides: "Lessee shall not assign this lease, or any interest therein, and shall not sublet the said premises or any part thereof, or any right or privilege appurtenant thereto, or suffer any other person (the agents and servants of Lessee excepted) to occupy or use said premises, or any portion thereof, without written consent of Lessor first had and obtained, and a consent to one assignment, subletting, occupation or use by any other person, shall not be deemed to be a consent to any subsequent assignment, subletting, occupation or use by another person. Any such assignment or subletting without this consent shall be void, and shall, at the option of Lessor, terminate this lease. This lease shall not, nor shall any interest therein, be assignable, as to the interest of lessee, by operation of alaw [*sic*], without the written consent of Lessor."

[6]Appellants originally sued Robert Bixler along with Ernest Pestana, Inc., but subsequently dropped their suit against Bixler.

*Gypsum Co.* (1932) 216 Cal. 420 [14 P.2d 758, 85 A.L.R. 917], where the lease contained a covenant against assignment without the consent of the lessor, this court stated: "It hardly needs citation of authority to the principle that covenants limiting the free alienation of property such as covenants against assignment are barely tolerated and must be strictly construed." (*Id.,* at p. 426.)[7] This is particularly true where the restraint in question is a "forfeiture restraint," under which the lessor has the option to terminate the lease if an assignment is made without his or her consent. (See *Karbelnig* v. *Brothwell* (1966) 244 Cal.App.2d 333, 341 [53 Cal.Rptr. 335]; *Ser-Bye Corp.* v. *C.P. & G. Markets, supra,* 78 Cal.App.2d at p. 919; Civ. Code, § 1442 ["A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created."]; 2 Powell, *supra,* ¶ 246[1], at pp. 372.100-372.101.)

Nevertheless, a majority of jurisdictions have long adhered to the rule that where a lease contains an approval clause (a clause stating that the lease cannot be assigned without the prior consent of the lessor), the lessor may arbitrarily refuse to approve a proposed assignee no matter how suitable the assignee appears to be and no matter how unreasonable the lessor's objection. (See, e.g., *B & R Oil Co., Inc.* v. *Ray's Mobile Homes, Inc.* (1980) 139 Vt. 122 [422 A.2d 1267]; *Dress Shirt Sales, Inc.* v. *Hotel Martinique Associates* (1963) 12 N.Y.2d 339 [236 N.Y.S.2d 613, 190 N.E.2d 10]; *Jacobs* v. *Klawans* (1961) 225 Md. 147 [169 A.2d 677]; *Segre* v. *Ring* (1961) 103 N.H. 278 [170 A.2d 265]; *Gruman* v. *Investors Diversified Services* (1956) 247 Minn. 502 [78 N.W.2d 377]; Annot., 31 A.L.R.2d 831 (1953); 51C C.J.S., § 36(1).) The harsh consequences of this rule have often been avoided through application of the doctrines of waiver and estoppel, under which the lessor may be found to have waived (or be estopped from asserting) the right to refuse consent to assignment.[8]

---

[7]There are many examples of the narrow effect given to lease terms purporting to restrict assignment. Covenants against assignment without the prior consent of the lessor have been held not to affect the lessee's right to sublease (*Stevinson* v. *Joy* (1912) 164 Cal. 279, 286 [128 P. 751]), to mortgage the leasehold (*Chapman* v. *Great Western Gypsum Co., supra,* 216 Cal. at pp. 426-427) or to assign his or her interest to a cotenant (*Hoops* v. *Tate* (1951) 104 Cal.App.2d 486 [231 P.2d 560]). Such covenants also do not prevent transfer of a leasehold interest by will (*Burns* v. *McGraw* (1946) 75 Cal.App.2d 481 [171 P.2d 148]), by bankruptcy (*Farnum* v. *Hefner* (1889) 79 Cal. 575, 580 [21 P. 955]), by the personal representative of a deceased tenant (*Joost* v. *Castel* (1939) 33 Cal.App.2d 138, 141 [91 P.2d 172]) or by transfer among partners (*Safeway Stores, Inc.* v. *Buhlinger* (1927) 85 Cal.App. 717, 718-719 [259 P. 1013]) or spouses (*Buck* v. *Cardwell* (1958) 161 Cal.App.2d 830, 835 [327 P.2d 223]). Covenants against assignment furthermore do not prohibit transfer of the stock of a corporate tenant (*Ser-Bye Corp.* v. *C.P. & G. Market, Inc.* (1947) 78 Cal.App.2d 915, 920-921 [179 P.2d 342]) or assignment of a lease to a corporation wholly owned by the tenant (*Sexton* v. *Nelson* (1964) 228 Cal.App.2d 248, 258-259 [39 Cal.Rptr. 407]).

[8]In California these doctrines have been liberally applied. See *Buchanan* v. *Banta* (1928) 204 Cal. 73, 77, 78 [266 P. 547]; *Trubowitch* v. *Riverbank Canning Co.* (1947) 30 Cal.2d 335, 342-343 [182 P.2d 182]; *Bedford Investment Co.* v. *Folb* (1947) 79 Cal.App.2d 363,

■ The traditional majority rule has come under steady attack in recent years. A growing minority of jurisdictions now hold that where a lease provides for assignment only with the prior consent of the lessor, such consent may be withheld *only where the lessor has a commercially reasonable objection to the assignment,* even in the absence of a provision in the lease stating that consent to assignment will not be unreasonably withheld. (See *Boss Barbara, Inc.* v. *Newbill* (1982) 97 N.M. 239 [638 P.2d 1084]; *Jack Frost Sales* v. *Harris Trust & Sav. Bank* (1982) 104 Ill.App.3d 933 [433 N.E.2d 941, 949]; *Fernandez* v. *Vasquez* (Fla.App. 1981) 397 So.2d 1171 [21 A.L.R.4th 181]; *Warmack* v. *Merchants Nat. Bank of Fort Smith* (1981) 272 Ark. 166 [612 S.W.2d 733]; *Funk* v. *Funk* (1981) 102 Idaho 521 [633 P.2d 586]; *Hendrickson* v. *Freericks* (Alaska 1980) 620 P.2d 205; *Homa-Goff Interiors, Inc.* v. *Cowden* (Ala. 1977) 350 So.2d 1035; *Shaker Building Co.* v. *Federal Lime & Stone Co.* (1971) 28 Ohio Misc. 246 [57 Ohio Ops.2d 486, 277 N.E.2d 584]; Rest.2d Property, § 15.2(2) (1977); Annot., 21 A.L.R.4th 188 (1983).)[9]

For the reasons discussed below, we conclude that the minority rule is the preferable position. Although this is an issue of first impression in this court, several decisions of the Court of Appeal have reflected the changing trend in the law on this question. In *Richard* v. *Degen & Brody, Inc.* (1960) 181 Cal.App.2d 289 [5 Cal.Rptr. 263], the court adopted the majority rule: " '[W]here a subletting or assignment of the leased premises without the consent of the lessor is prohibited, he may withhold his assent arbitrarily and without regard to the qualifications of the proposed assignee, unless . . . the lease provides that consent shall not be arbitrarily or unreasonably withheld. . . .' " (*Id.,* at p. 299, quoting 51 C.J.S., § 36.) *Richard* was not followed or cited on this point until the decision in *Laguna Royale Owners Association* v. *Darger* (1981) 119 Cal.App.3d 670 [174 Cal.Rptr. 136], which questioned the "continuing vitality" of the rule in *Richard* and then distinguished it on its facts. (*Id.,* at p. 681.)[10] The court in *Laguna Royale*

---

366 [180 P.2d 361]; *Group Property, Inc.* v. *Bruce* (1952) 113 Cal.App.2d 549, 556-557 [248 P.2d 761]; *Karbelnig* v. *Brothwell* (1966) 244 Cal.App.2d 333, 341 [53 Cal.Rptr. 335].

[9]The minority rule has also been espoused in jurisdictions where there appears to be conflicting or uncertain authority. *North Carolina:* See *Sanders* v. *Tropicana* (1976) 31 N.C.App. 276 [229 S.E.2d 304] [minority rule]; *L & H Inv., Ltd.* v. *Belvey Corp.* (W.D.N.C. 1978) 444 F.Supp. 1321, 1325 [minority rule, applying North Carolina law]; but see *Isbey* v. *Crews* (1981) 55 N.C.App. 47 [284 S.E.2d 534] [majority rule]. *Louisiana:* *Gamble* v. *New Orleans Housing Mart, Inc.* (La.App. 1963) 154 So.2d 625 [minority rule]; *Associates Commercial Corp.* v. *Bayou Management* (La.App. 1982) 426 So.2d 672 [minority rule]; but see *Illinois Central R. Co.* v. *International Harvester Co.* (La. 1979) 368 So.2d 1009, 1014-1015 [majority rule]. *Massachusetts: Granite Trust Bldg. Corp.* v. *Great Atlantic & Pac. T. Co.* (D.Mass 1940) 36 F.Supp. 77 [minority rule, applying Massachusetts law; dicta].

[10]*Richard* involved an ordinary commercial lease while *Laguna Royale* involved a leasehold condominium.

rejected the contention that an approval clause confers an absolute right to withhold consent: "We hold that in exercising its power to approve or disapprove transfers or assignments Association must act reasonably, exercising its power in a fair and nondiscriminatory manner and withholding approval only for a reason or reasons rationally related to the protection, preservation and proper operation of the property and the purposes of Association as set forth in its governing instruments." (*Id.*, at p. 680.)

Two years later, in *Cohen v. Ratinoff* (1983) 147 Cal.App.3d 321 [195 Cal.Rptr. 84], the same district of the Court of Appeal that had decided *Richard* (the Second District) directly confronted and rejected the rule of that case. The court held that "where, as here, the lease provides for assignment or subletting only with the prior consent of the lessor, a lessor may refuse consent only where he has a good faith reasonable objection to the assignment or sublease, even in the absence of a provision prohibiting the unreasonable or arbitrary withholding of consent to an assignment of a commercial lease. Examples of bases for such good faith reasonable objection would be inability to fulfill terms of the lease, financial irresponsibility or instability, suitability of premises for intended use, or intended unlawful or undesirable use of premises.　██ 　No such bases were raised by the lessor." (*Id.*, at p. 330.)[11]

Shortly thereafter, the First District of the Court of Appeal followed suit in *Schweiso v. Williams* (1984) 150 Cal.App.3d 883 [198 Cal.Rptr. 238], adopting the rule set forth in *Cohen*. The court further noted that "denying consent solely on the basis of personal taste, convenience or sensibility or in order that the landlord may charge a higher rent than originally contracted for have been held arbitrary reasons failing the tests of good faith and reasonableness under commercial leases. (*Chanslor-Western O. & D. Co. v. Metropolitan San. D.* (1970) 131 Ill.App.2d 527 [266 N.E.2d 405]; citing *Broad & Branford Place Corp. v. J.J. Hockenjos Co.* (1944) 132 N.J.L. 229 [39 A.2d 80, 82].)" (*Id.*, at p. 886, fn. omitted.)

Before the conflict among the Courts of Appeal reached this court for resolution, the United States Court of Appeals for the Ninth Circuit was forced to resolve the conflict in *Prestin v. Mobil Oil Corp.* (9th Cir. 1984) 741 F.2d 268 (applying California law). The Ninth Circuit reviewed the

---

[11]In *Cohen*, the court reversed a judgment on the pleadings in favor of the lessor. In so doing, the court allowed the lessee on remand to proceed with a cause of action for "bad faith breach of contract" and a claim for punitive damages based thereon. While we express no view on the merits of the claim for punitive damages in *Cohen*, we note that not every breach of the covenant of good faith and fair dealing in a commercial contract gives rise to an action in tort. (See *Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.* (1984) 36 Cal.3d 752, 768 [206 Cal.Rptr. 354, 686 P.2d 1158].)

cases discussed above and stated: "[*Richard* has no support in later California cases,] having been rejected by the one court which has bothered to mention it [*Laguna Royale*].[12] We therefore find that the California Supreme Court would adopt the rule recently enunciated in *Cohen* v. *Ratinoff*, 147 Cal.App.3d at 330, 195 Cal.Rptr. 84, that a lessor . . . may refuse consent to an assignment or sublease only when the lessor has a good faith reasonable objection to it." (*Id.*, at p. 271.) ■ We now adopt the rule tentatively ascribed to us by the *Prestin* court, and disapprove the holdings in *Richard* v. *Degen & Brody, Inc., supra,* 181 Cal.App.2d 289 and *Hamilton* v. *Dixon, supra,* 168 Cal.App.3d 1004.

## III.

The impetus for change in the majority rule has come from two directions, reflecting the dual nature of a lease as a conveyance of a leasehold interest and a contract. (See *Medico-Dental etc. Co.* v. *Horton & Converse* (1942) 21 Cal.2d 411, 418 [132 P.2d 457].) ■ The policy against restraints on alienation pertains to leases in their nature as *conveyances*. Numerous courts and commentators have recognized that "[i]n recent times the necessity of permitting reasonable alienation of commercial space has become paramount in our increasingly urban society." (*Schweiso* v. *Williams, supra,* 150 Cal.App.3d at p. 887. See also *Homa-Goff Interiors, Inc.* v. *Cowden, supra,* 350 So.2d at 1037; *Funk* v. *Funk, supra,* 633 P.2d at 589; 2 Powell, *supra,* ¶ 246[1], at pp. 372.97-372.98; Comment, *The Approval Clause in a Lease: Toward a Standard of Reasonableness* (1983) 17 U.S.F. L.Rev. 681, 683, 689; Note, *Landlord-Tenant—Lessor's Rejection of Sublease Agreement, Pursuant to a Consent Clause, Must be Judged Under a Reasonable Commercial Standard* (1978) 9 Cum. L.Rev. 309, 312.)

Civil Code section 711 provides: "Conditions restraining alienation, when repugnant to the interest created, are void." It is well settled that this rule is not absolute in its application, but forbids only *unreasonable* restraints on alienation. (*Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943, 948 [148 Cal.Rptr. 379, 582 P.2d 970]; *Cohen* v. *Ratinoff, supra,* 147 Cal.App.3d at p. 329; *Laguna Royale Owners Assn.* v. *Darger, supra,* 119 Cal.App.3d at p. 682.) Reasonableness is determined by comparing the justification for a particular restraint on alienation with the quantum of restraint actually imposed by it. "[T]he greater the quantum of restraint that results from enforcement of a given clause, the greater must be the justification for that enforcement." (*Wellenkamp* v. *Bank of America, supra,* 21 Cal.3d at

---

[12]Subsequent to the Ninth Circuit ruling, the Court of Appeal for the Fourth District, in *Hamilton* v. *Dixon* (1985) 168 Cal.App.3d 1004 [214 Cal.Rptr. 639], followed the holding of *Richard* and rejected that of *Cohen* and *Schweiso*.

p. 949.) In *Cohen* v. *Ratinoff, supra,* the court examined the reasonableness of the restraint created by an approval clause in a lease: "Because the lessor has an interest in the character of the proposed commercial assignee, we cannot say that an assignment provision requiring the lessor's consent to an assignment is inherently repugnant to the leasehold interest created. We do conclude, however, that *if such an assignment provision is implemented in such a manner that its underlying purpose is perverted by the arbitrary or unreasonable withholding of consent, an unreasonable restraint on alienation is established.*" (*Id.,* 147 Cal.App.3d at p. 329, italics added.)

One commentator explains as follows: "The common-law hostility to restraints on alienation had a large exception with respect to estates for years. A lessor could prohibit the lessee from transferring the estate for years to whatever extent he might desire. It was believed that the objectives served by allowing such restraints outweighed the social evils implicit in the restraints, in that they gave to the lessor a needed control over the person entrusted with the lessor's property and to whom he must look for the performance of the covenants contained in the lease. Whether this reasoning retains full validity can well be doubted. Relationships between lessor and lessee have tended to become more and more impersonal. Courts have considerably lessened the effectiveness of restraint clauses by strict construction and liberal applications of the doctrine of waiver. With the shortage of housing and, in many places, of commercial space as well, the allowance of lease clauses forbidding assignments and subleases is beginning to be curtailed by statutes." (2 Powell, *supra,* ¶ 246[1], at pp. 372.97-372.98, fns. omitted.)[13]

The Restatement Second of Property adopts the minority rule on the validity of approval clauses in leases: "A restraint on alienation without the consent of the landlord of a tenant's interest in leased property is valid, *but the landlord's consent to an alienation by the tenant cannot be withheld unreasonably,* unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent." (Rest.2d Property, § 15.2(2) (1977), italics added.)[14] A comment to the section explains: "The landlord may have an understandable concern about certain personal quali-

---

[13]Statutes have been enacted in at least four states prohibiting lessors from arbitrarily refusing consent to the assignment of leases. (Alaska Stat., § 34.03.060 (1975) [residential leases only]; Del. Code Ann., tit. 25, § 5512, subd. (b) (1974) [residential, commercial and farm leases]; Hawaii Rev. Stat., § 516-63 [residential leases only]; N.Y. Real Prop. Law, § 226-b (McKinney 1982) [residential leases only].

This rule has also been adopted by a number of jurisdictions as a matter of common law. (See *ante,* p. 496.)

[14]This case does not present the question of the validity of a clause absolutely prohibiting assignment, or granting absolute discretion over assignment to the lessor. We note that under the Restatement rule such a provision would be valid if freely negotiated.

ties of a tenant, particularly his reputation for meeting his financial obligations. The preservation of the values that go into the personal selection of the tenant justifies upholding a provision in the lease that curtails the right of the tenant to put anyone else in his place by transferring his interest, but this justification does not go to the point of allowing the landlord arbitrarily and without reason to refuse to allow the tenant to transfer an interest in leased property." (*Id.*, com. a.) Under the Restatement rule, the lessor's interest in the character of his or her tenant is protected by the lessor's right to object to a proposed assignee on reasonable commercial grounds. (See *id.*, reporter's note 7 at pp. 112-113.) The lessor's interests are also protected by the fact that the original lessee remains liable to the lessor as a surety even if the lessor consents to the assignment and the assignee expressly assumes the obligations of the lease. (*Peiser* v. *Mettler* (1958) 50 Cal.2d 594, 602 [328 P.2d 953, 74 A.L.R.2d 1]; *Samuels* v. *Ottinger* (1915) 169 Cal. 209, 212 [146 P. 638].)

The second impetus for change in the majority rule comes from the nature of a lease as a *contract.* As the Court of Appeal observed in *Cohen* v. *Ratinoff, supra,* "[s]ince *Richard* v. *Degen & Brody, Inc.* [espousing the majority rule] was decided, . . . there has been an increased recognition of and emphasis on the duty of good faith and fair dealing inherent in every contract." (*Id.*, 147 Cal.App.3d at p. 329.) ▮ Thus, "[i]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. . . ." (*Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 771 [128 P.2d 665]. See also *Bleecher* v. *Conte* (1981) 29 Cal.3d 345, 350 [213 Cal.Rptr. 852, 698 P.2d 1154].) "[W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." (*Cal. Lettuce Growers* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 484 [289 P.2d 785, 49 A.L.R.2d 496]. See also, *Larwin-Southern California, Inc.* v. *JGB Investment Co.* (1979) 101 Cal.App.3d 626, 640 [162 Cal.Rptr. 52].) Here the lessor retains the discretionary power to approve or disapprove an assignee proposed by the other party to the contract; this discretionary power should therefore be exercised in accordance with commercially reasonable standards. "Where a lessee is entitled to sublet under common law, but has agreed to limit that right by first acquiring the consent of the landlord, we believe the lessee has a right to expect that consent will not be unreasonably withheld." (*Fernandez* v. *Vasquez, supra,* 397 So.2d at p. 1174; accord, *Boss Barbara, Inc.* v. *Newbill, supra,* 638 P.2d at p. 1086.)[15]

---

[15]Some commentators have drawn an analogy between this situation and the duties of good faith and reasonableness implied in all transactions under the Uniform Commercial Code.

■ Under the minority rule, the determination whether a lessor's refusal to consent was reasonable is a question of fact. Some of the factors that the trier of fact may properly consider in applying the standards of good faith and commercial reasonableness are: financial responsibility of the proposed assignee; suitability of the use for the particular property; legality of the proposed use; need for alteration of the premises; and nature of the occupancy, i.e., office, factory, clinic, etc. (See *Fernandez v. Vasquez, supra,* 397 So.2d at p. 1174; *Cohen v. Ratinoff, supra,* 147 Cal.App.3d at p. 330; Rest.2d Property, § 15.2, reporter's note 7 at pp. 112-113; Annot., 54 A.L.R.3d 689 (1973); 1 Friedman on Leases (1974) § 7.304c.)

Denying consent solely on the basis of personal taste, convenience or sensibility is not commercially reasonable. (*Broad & Branford Place Corp. v. J. J. Hockenjos Co.,* 132 N.J.L. 229 [39 A.2d 80, 82]; *Fernandez v. Vasquez, supra,* 397 So.2d at p. 1174; Rest.2d Property, § 15.2, reporter's note 7 at pp. 112-113.) Nor is it reasonable to deny consent "in order that the landlord may charge a higher rent than originally contracted for." (*Schweiso v. Williams, supra,* 150 Cal.App.3d at p. 886. See *Bedford Inv. Co. v. Folb, supra,* 79 Cal.App.2d 363; *1010 Potomac Assoc. v. Grocery Manufacturers* (D.C.App. 1984) 485 A.2d 199, 208-210; *Funk v. Funk, supra,* 633 P.2d 586; *Fernandez v. Vasquez, supra,* 397 So.2d at p. 1174; *Chanslor-Western O. & D. Co.* v. *Metropolitan San. D.* (1970) 131 Ill.App.2d 527 [266 N.E.2d 405]; *Ringwood Associates, Ltd.* v. *Jack's of Route 23, Inc.* (1977) 153 N.J.Super. 294 [379 A.2d 508].) This is because the lessor's desire for a better bargain than contracted for has nothing to do with the permissible purposes of the restraint on alienation—to protect the lessor's interest in the preservation of the property and the performance of the lease covenants. " '[T]he clause is for the protection of the landlord *in its ownership and operation of the particular property*—not for its general economic protection.' " (*Ringwood Associates v. Jack's of Route 23, Inc., supra,* 379 A.2d at p. 512, quoting *Krieger v. Helmsley-Spear, Inc.* (1973) 62 N.J. 423 [302 A.2d 129], italics added.)

In contrast to the policy reasons advanced in favor of the minority rule, the majority rule has traditionally been justified on three grounds. Respondent raises a fourth argument in its favor as well. None of these do we find compelling.

First, it is said that a lease is a conveyance of an interest in real property, and that the lessor, having exercised a personal choice in the selection of a

---

(U. Com. Code §§ 1-203, 2-103(b); see also U. Com. Code, § 1-102, com. 1 [permitting application of the U. Com. Code to matters not expressly within its scope].) See Comment, *The Approval Clause in a Lease: Toward a Standard of Reasonableness, supra,* 17 U.S.F. L.Rev. 681, 695; see also Levin, *Withholding Consent to Assignment: The Changing Rights of the Commercial Landlord* (1980) 30 De Paul L.Rev. 109, 136.)

tenant and provided that no substitute shall be acceptable without prior consent, is under no obligation to look to anyone but the lessee for the rent. (*Gruman* v. *Investors Diversified Services, supra,* 247 Minn. 502 [78 N.W.2d 377, 380]; see also, *Funk* v. *Funk, supra,* 102 Idaho 521 [633 P.2d 586, 591] (Bakes, C. J., dis.).) This argument is based on traditional rules of conveyancing and on concepts of freedom of ownership and control over one's property. (*Funk* v. *Funk, supra,* 633 P.2d at p. 591 (Bakes, C. J., dis.).)

A lessor's freedom at common law to look to no one but the lessee for the rent has, however, been undermined by the adoption in California of a rule that lessors—like all other contracting parties—have a duty to mitigate damages upon the lessee's abandonment of the property by seeking a substitute lessee. (See Civ. Code, § 1951.2.) ■ Furthermore, the values that go into the personal selection of a lessee are preserved under the minority rule in the lessor's right to refuse consent to assignment on any commercially reasonable grounds. Such grounds include not only the obvious objections to an assignee's financial stability or proposed use of the premises, but a variety of other commercially reasonable objections as well. (See, e.g., *Arrington* v. *Walter E. Heller International Corp.* (1975) 30 Ill.App.3d 631 [333 N.E.2d 50] [desire to have only one "lead tenant" in order to preserve "image of the building" as tenant's international headquarters]; *Warmack* v. *Merchants Nat. Bank of Fort Smith* (1981) 272 Ark. 166 [612 S.W.2d 733] [desire for good "tenant mix" in shopping center]; *List* v. *Dahnke* (Colo.App. 1981) 638 P.2d 824 [lessor's refusal to consent to assignment of lease by one restaurateur to another was reasonable where lessor believed proposed specialty restaurant would not succeed at that location].) The lessor's interests are further protected by the fact that the original lessee remains a guarantor of the performance of the assignee. (See *ante,* p. 500.)

■ The second justification advanced in support of the majority rule is that an approval clause is an unambiguous reservation of absolute discretion in the lessor over assignments of the lease. The lessee could have bargained for the addition of a reasonableness clause to the lease (i.e., "consent to assignment will not be unreasonably withheld"). The lessee having failed to do so, the law should not rewrite the parties' contract for them. (See *Gruman* v. *Investors Diversified Services, supra,* 78 N.W.2d at pp. 381-382; *Funk* v. *Funk, supra,* 633 P.2d at pp. 590, 592 (Bakes, C. J., dis.).)

Numerous authorities have taken a different view of the meaning and effect of an approval clause in a lease, indicating that the clause is not "clear and unambiguous," as respondent suggests. As early as 1940, the court in *Granite Trust Bldg. Corp.* v. *Great Atlantic & Pac. T. Co., supra,* 36

F.Supp. 77, examined a standard approval clause and stated: "It would seem to be the better law that when a lease restricts a lessee's rights by requiring consent before these rights can be exercised, *it must have been in the contemplation of the parties that the lessor be required to give some reason for withholding consent."* (*Id.,* at p. 78, italics added.) The same view was expressed by commentators in the 1950's. (See Note, *Landlord and Tenant—Right of Lessor to Refuse Any Settlement When Lease Prohibits Transfer Without Consent* (1957) 41 Minn. L.Rev. 355, 358-359; Note, *Real Property—Landlord and Tenant—Lessor's Arbitrary Withholding of Consent to Sublease* (1957) 55 Mich. L.Rev. 1029, 1031; 2 Powell, *supra,* § 229, fn. 79 (1950).) Again in 1963, the court in *Gamble* v. *New Orleans Housing Mart, Inc.* (La.App. 1963) 154 So.2d 625, stated: "Here the lessee is simply not permitted to sublet without the written consent of the lessor. This does not *prohibit* or *interdict* subleasing. To the contrary, it permits subleasing provided only that the lessee first obtain the written consent of the lessor. *It suggests or connotes that, when the lessee obtains a subtenant acceptable or satisfactory to the lessor, he may sublet. . . .* Otherwise the provision simply would prohibit subleasing." (*Id.,* at p. 627, final italics added.) In *Shaker Building Co.* v. *Federal Lime & Stone Co., supra,* 28 Ohio Misc. 246 [277 N.E.2d 584], the court expressed the same view: "While the lease before the court clearly states that no assignment may take place without prior consent, inherent, however, in that provision is the representation that an assignment is possible. This court is of the opinion that *equally inherent in that provision is the representation that such prior consent will not be withheld under any and all circumstances, reasonable or unreasonable."* (*Id.,* 277 N.E.2d at p. 587, italics added.)[16]

In light of the interpretations given to approval clauses in the cases cited above, and in light of the increasing number of jurisdictions that have adopted the minority rule in the last 15 years, the assertion that an approval clause "clearly and unambiguously" grants the lessor absolute discretion over assignments is untenable. It is not a rewriting of a contract, as respondent suggests, to recognize the obligations imposed by the duty of good faith and fair dealing, which duty is implied by law in every contract.

The third justification advanced in support of the majority rule is essentially based on the doctrine of stare decisis. It is argued that the courts

---

[16]Similar interpretations of the standard approval clause have been advanced recently by courts in support of their adoption of the minority rule. (See, e.g., *Boss Barbara, Inc.* v. *Newbill, supra,* 638 P.2d at p. 1086 ["The lease provision neither restricts the landlord's power to withhold consent unless he has reasonable cause, nor does the provision permit the landlord to unreasonably and arbitrarily withhold consent to a sublease agreement."]; *Fernandez* v. *Vasquez, supra,* 397 So.2d at p. 1174 ["Where a lessee is entitled to sublet under common law, but has agreed to limit that right by first acquiring the consent of the landlord, we believe the lessee has a right to expect that consent will not be unreasonably withheld."].)

should not depart from the common law majority rule because "many leases now in effect covering a substantial amount of real property and creating valuable property rights were carefully prepared by competent counsel in reliance upon the majority viewpoint." (*Gruman* v. *Investors Diversified Services, supra,* 78 N.W.2d at p. 381; accord, *Funk* v. *Funk, supra,* 633 P.2d at p. 592 (Bakes, C. J., dis.); *Hamilton* v. *Dixon, supra,* 168 Cal.App.3d at p. 1008.) As pointed out above, however, the majority viewpoint has been far from universally held and has never been adopted by this court. Moreover, the trend in favor of the minority rule should come as no surprise to observers of the changing state of real property law in the 20th century. The minority rule is part of an increasing recognition of the contractual nature of leases and the implications in terms of contractual duties that flow therefrom. (See *Green* v. *Superior Court* (1974) 10 Cal.3d 616, 624 [111 Cal.Rptr. 704, 517 P.2d 1168].) ■ We would be remiss in our duty if we declined to question a view held by the majority of jurisdictions simply because it is held by a majority. As we stated in *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669], the "vitality [of the common law] can flourish only so long as the courts remain alert to their obligation and opportunity to change the common law when reason and equity demand it." (*Id.,* at p. 394.)

■ A final argument in favor of the majority rule is advanced by respondent and stated as follows: "Both tradition and sound public policy dictate that the lessor has a right, under circumstances such as these, to realize the increased value of his property." Respondent essentially argues that any increase in the market value of real property during the term of a lease properly belongs to the lessor, not the lessee. We reject this assertion. One California commentator has written: "[W]hen the lessee executed the lease he acquired the contractual right for the exclusive use of the premises, and all of the benefits and detriment attendant to possession, for the term of the contract. He took the downside risk that he would be paying too much rent if there should be a depression in the rental market. . . . Why should he be deprived of the contractual benefits of the lease because of the fortuitous inflation in the marketplace[?] By reaping the benefits he does not deprive the landlord of anything to which the landlord was otherwise entitled. The landlord agreed to dispose of possession for the limited term and he could not reasonably anticipate any more than what was given to him by the terms of the lease. His reversionary estate will benefit from the increased value from the inflation in any event, at least upon the expiration of the lease." (4 Miller & Starr, Current Law of Cal. Real Estate (1977) 1984 supp., § 27:92 at p. 321.)

Respondent here is trying to get *more* than it bargained for in the lease. A lessor is free to build periodic rent increases into a lease, as the lessor

did here. (See *ante,* p. 493.) Any increased value of the property beyond this "belongs" to the lessor only in the sense, as explained above, that the lessor's reversionary estate will benefit from it upon the expiration of the lease. We must therefore reject respondent's argument in this regard.[17]

A different argument in favor of the majority rule is suggested by the Court of Appeal in its opinion in this case, though the point was never raised by the parties. The Court of Appeal drew an inference from Civil Code section 1951.4 that the Legislature, when it adopted that section in 1970, considered and rejected the minority rule on approval clauses.

Section 1951.4 provides, in essence, that a lessor can avoid the statutory duty to mitigate damages (see Civ. Code, § 1951.2) by contracting to shift that duty onto the lessee.[18] Absent such a shifting, the lessor could only

---

[17]Amicus Pillsbury, Madison & Sutro request that we make clear that, "whatever principle governs in the absence of express lease provisions, nothing bars the parties to commercial lease transactions from making their own arrangements respecting the allocation of appreciated rentals if there is a transfer of the leasehold." This principle we affirm; we merely hold that the clause in the instant lease established no such arrangement.

[18]Civil Code section 1951.2 provides: "(a) Except as otherwise provided in Section 1951.4, if a lessee of real property breaches the lease and abandons the property before the end of the term or if his right to possession is terminated by the lessor because of a breach of the lease, the lease terminates. Upon such termination, the lessor may recover from the lessee:

"(1) The worth at the time of award of the unpaid rent which had been earned at the time of termination;

"(2) The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the lessee proves could have been reasonably avoided;

"(3) Subject to subdivision (c), the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that the lessee proves could be reasonably avoided; and

"(4) Any other amount necessary to compensate the lessor for all the detriment proximately caused by the lessee's failure to perform his obligations under the lease or which in the ordinary course of things would be likely to result therefrom.

"(b) The 'worth at the time of award' of the amounts referred to in paragraphs (1) and (2) of subdivision (a) is computed by allowing interest at such lawful rate as may be specified in the lease or, if no such rate is specified in the lease, at the legal rate. The worth at the time of award of the amount referred to in paragraph (3) of subdivision (a) is computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus 1 percent.

"(c) The lessor may recover damages under paragraph (3) of subdivision (a) only if:

"(1) The lease provides that the damages he may recover include the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award, or for any shorter period of time specified in the lease, exceeds the amount of such rental loss for the same period that the lessee proves could be reasonably avoided; or

"(2) The lessor relet the property prior to the time of award and proves that in reletting the property he acted reasonably and in a good-faith effort to mitigate the damages, but the recovery of damages under this paragraph is subject to any limitations specified in the lease.

"(d) Efforts by the lessor to mitigate the damages caused by the lessee's breach of the

recover, in the event of the lessee's breach, that amount of damages which the lessor could not reasonably avoid by reletting the premises. Since the statutory scheme would be frustrated if the lessor could first contract to shift the duty of mitigation onto the lessee and then block the lessee's attempts to assign or sublease, the statute provides that where consent to assignment is required, the lease must expressly state that such consent will not be unreasonably withheld. (Civ. Code, § 1951.4, subd. (b)(3).)

It is true that section 1951.4 impliedly recognizes that absent a "reasonableness" clause, a lessor might believe that he or she had a common law right arbitrarily to withhold consent to assignment, and thus frustrate the statutory scheme. ■■■ However, implicit recognition in a statute of an existing common law rule that is not the subject of the statute does not constitute a codification of that rule, and certainly does not prevent a court from reexamining it. We cannot agree with the Court of Appeal's speculation that the Legislature, when it adopted section 1951.4 in 1970, considered and rejected the minority position on the interpretation of an approval clause in a lease.

IV.

■■■ In conclusion, both the policy against restraints on alienation and the implied contractual duty of good faith and fair dealing militate in favor of adoption of the rule that where a commercial lease provides for assignment only with the prior consent of the lessor, such consent may be withheld only where the lessor has a commercially reasonable objection to the as-

---

lease do not waive the lessor's right to recover damages under this section.

"(e) Nothing in this section affects the right of the lessor under a lease of real property to indemnification for liability arising prior to the termination of the lease for personal injuries or property damage where the lease provides for such indemnification."

Civil Code section 1951.4 provides: "(a) The remedy described in this section is available only if the lease provides for this remedy.

"(b) Even though a lessee of real property has breached his lease and abandoned the property, the lease continues in effect for so long as the lessor does not terminate the lessee's right to possession, and the lessor may enforce all his rights and remedies under the lease, including the right to recover the rent as it becomes due under the lease, if the lease permits the lessee to do any of the following:

"(1) Sublet the property, assign his interest in the lease, or both.

"(2) Sublet the property, assign his interest in the lease, or both, subject to standards or conditions, and the lessor does not require compliance with any unreasonable standard for, nor any unreasonable condition on, such subletting or assignment.

"(3) Sublet the property, assign his interest in the lease, or both, with the consent of the lessor, and the lease provides that such consent shall not unreasonably be withheld.

"(c) For the purposes of subdivision (b), the following do not constitute a termination of the lessee's right to possession:

"(1) Acts of maintenance or preservation or efforts to relet the property.

"(2) The appointment of a receiver upon initiative of the lessor to protect the lessor's interest under the lease."

signee or the proposed use. Under this rule, appellants have stated a cause of action against respondent Ernest Pestana, Inc.

The order sustaining the demurrer to the complaint, which we have deemed to incorporate a judgment of dismissal,[19] is reversed.

Bird, C. J., Reynoso, J., Grodin, J., and Kaus, J.,* concurred.

**LUCAS, J.**—I respectfully dissent. In my view we should follow the weight of authority which, as acknowledged by the majority herein, allows the commercial lessor to withhold his consent to an assignment or sublease arbitrarily or without reasonable cause. The majority's contrary ruling, requiring a "commercially reasonable objection" to the assignment, can only result in a proliferation of unnecessary litigation.

The correct analysis is contained in the opinion of Justice Carl Anderson for the Court of Appeal in this case. I adopt the following portion of his opinion as my dissent:

"This case is strikingly similar to a recent case this court decided— *Schweiso* v. *Williams* (1984) 150 Cal.App.3d 883, . . . In *Schweiso,* we decided to follow the case of *Cohen* v. *Ratinoff* (1983) 147 Cal.App.3d 321 [195 Cal.Rptr. 84], which held that where 'the lease provides for assignment or subletting only with the prior consent of the lessor, a lessor may refuse consent only where he has a good faith reasonable objection to the assignment or sublease, even in the absence of a provision prohibiting the unreasonable or arbitrary withholding of consent to an assignment of a commercial lease.' (*Id.,* at p. 330.)

"Both *Schweiso* and *Cohen* recognize that they are themselves departures from the long-established rule in California that such a lease proviso had heretofore meant that the lessor may, indeed, refuse consent arbitrarily and even without a good faith reasonable objection. The lease in question herein was written long before *Schweiso* and *Cohen,* and was interpreted by the trial court four months before the first of these decisions was filed. For reasons which follow, we believe both *Schweiso* and *Cohen* were wrongly decided, now decline to follow them, and affirm the decision of the trial court sustaining the demurrer herein.

"The plain language of the lease provides that the lessee *shall not* assign the lease 'without written consent of Lessor first had and obtained . . . .

---

[19]See *ante,* footnote 3.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

Any such assignment or subletting without this consent shall be void, and shall, at the option of Lessor, terminate this lease.' The lease does not require that 'consent may not unreasonably be withheld'; the lease does not provide that 'the lessor may refuse consent only where he has a good faith reasonable objection to the assignment.' Neither have the parties so contracted, nor has the Legislature so required. Absent such legislative direction, the parties should be free to contract as they see fit.

"Appellant urges this court to rewrite the contract by adding a limitation on the lessor's withholding of consent—'that such consent may not be unreasonably withheld.' He urges that such must be implied in the term 'without written consent of lessor first had and obtained'; and he places the burden on the lessor to add language to negate that, if such be his intent—language such as 'such consent may be arbitrarily, capriciously and/or unreasonably withheld.'

"However, it is obvious that the attorney for the lessor agreeing to such a term was entitled to rely upon the state of the law then existing in California. And at such time (Dec. 12, 1969), it is clear that California followed the 'weight of authority' in these United States and allowed such consent to be arbitrarily or unreasonably withheld absent a provision to the contrary. (*Richard* v. *Degen & Brody, Inc.* (1960) 181 Cal.App.2d 289 [5 Cal.Rptr. 263].) The *Richard* v. *Degen & Brody* court clearly held that the weight of authority as expressed in 51 Corpus Juris Secundum section 36 was the law of California: ' ". . . where a subletting or assignment of the leased premises without the consent of the lessor is prohibited, he [lessor] may withhold his assent arbitrarily and without regard to the qualifications of the proposed assignee, unless . . . the lease provides that consent shall not be arbitrarily or unreasonably withheld, and in granting his assent may impose such conditions as he sees fit." ' (*Id.*, at p. 299.)

"Even those few jurisdictions and authorities which have rejected the 'arbitrary and capricious' rule have forthrightly recognized that in doing so, they depart from the majority: 'The general rule throughout the country has been that when a lease contains an approval clause, the landlord may arbitrarily and capriciously reject proposed subtenants.' (*Homa-Goff Interiors, Inc.* v. *Cowden* (Ala. 1977) 350 So.2d 1035, 1037.) See also the reporters' note to the Restatement Second of Property, section 15.2, at page 111, which *proposes* the very result advanced by appellants: 'The rule adopted in subsection (2) of this section that the landlord may not unreasonably withhold his consent to a transfer by the tenant is contrary to the established common-law rule that if the lease mandates the consent of the landlord to validate a transfer, and the lease does not provide for the landlord to give

consent if the transferee is reasonably suitable, such consent may be withheld arbitrarily by the landlord.' [Fn. omitted.]

"Those jurisdictions adopting the Restatement's proposed departure from the settled common law appear to do so upon the shaky public policy rationale that the consent of a lessor should not be withheld unreasonably and that to hold otherwise is to violate the principle that restraints on alienation should be narrowly construed. (See *Fernandez* v. *Vasquez* (Fla. 1981) 397 So.2d 1171; *Funk* v. *Funk* (1981) 102 Idaho 521 [633 P.2d 586]; *Shaker Building Co.* v. *Federal Lime & Stone Co.* (1971) 28 Ohio Misc. 246 [277 N.E.2d 584]; *Arrington* v. *Walter E. Heller International Corp.* (1975) 30 Ill.App.3d 631 [333 N.E.2d 50].) Some even cite 'moral needs' (*Homa-Goff Interiors, Inc.* v. *Cowden, supra,* 350 So.2d at p. 1038) or the 'increased recognition of and emphasis on the duty of good faith and fair dealing inherent in every contract' (*Cohen* v. *Ratinoff, supra,* 147 Cal.App.3d 321, 330), or the egregious motive in enforcing the clause seeking 'additional amounts of "blood" money from the appellants as a condition of consent to the assignments' (*Schweiso* v. *Williams, supra,* 150 Cal.App.3d 883, 887 . . .).

"Some jurisdictions have overruled the common law, at least as to residential leases, by legislative action. (See Alaska Stat., § 34.03.060 (1975); Delaware Code Ann., tit. 25, § 5512, subd. (b) (1915); Hawaii Rev. Stat., § 516-63 (Supp. 1975).) This would appear to be the wisest procedure, if only to effect the repeal prospectively and thereby give force to those contracts entered into when the common law prevailed. See Justice Bloodworth's dissent in *Homa-Goff Interiors, Inc.* v. *Cowden, supra,* 350 So.2d at page 1039: 'To overturn a century and a quarter of existing real estate law without giving contracting parties "fair notice" is my principal complaint with the majority's opinion. At the very least, I think the majority ought to make the rule they have adopted "prospective." ' '

"However, those jurisdictions which reject the temptation to follow what the minority call 'the trend' (see *Fernandez* v. *Vasquez, supra,* 397 So.2d at p. 1173) do so because they simply refuse to rewrite unambiguous language within a lease. (*B & R Oil Company, Inc.* v. *Ray's Mobile Homes, Inc.* (1980) 139 Vt. 122 [422 A.2d 1267].) They so refuse in order to uphold the integrity of the contract and the inalienable rights of citizens to seek and obtain enforcement thereof by the courts. For those the motives and reasons for exercise of rights fairly contracted for are simply irrelevant: 'This commercial lease expressly provided that it could not be assigned without the landlord's consent; there was no limitation in the lease that such consent should not be unreasonably withheld. . . . In the circumstances, the landlord was merely exercising its legal contractual rights in refusing to consent to

an assignment of the lease unless the lease was modified to increase the rent. Such an exercise of the landlord's legal rights does not constitute economic duress so as to entitle the tenant to damages. [Citation.]' (*Herlou Card Shop, Inc.* v. *Prudential Insurance Co. of America* (1979) 73 App.Div.2d 562 [422 N.Y.S.2d 708] [reversing a $55,000 award to tenant].)

"Further persuading us that *Cohen* and *Schweiso* were wrongly decided is the failure of either case to discuss the history of what action the California Legislature has taken and, perhaps more importantly, not taken. For if the Legislature has considered adopting appellant's position as the law of California and, having so considered, has rejected such a change, that refusal to act certainly implies legislative recognition and approval of current law. And this appears to be precisely the case in California. For in 1970 the Legislature added section 1951.4 to the Civil Code (eff. July 1, 1971) to permit landlords to recover rent due under the lease when the lessee breaches and abandons *if* the lease permits the lessee to '[s]ublet the property, assign his interest in the lease, or both, with the consent of the lessor, *and the lease provides that such consent shall not unreasonably be withheld.*' (Civ. Code, § 1951.4, subd. (b)(3), italics added.) If the lease does not so provide then section 1951.2 of the Civil Code places upon the lessor the burden of retaking the premises and reletting the property in order to minimize damages.

"The Law Revision Commission comment on this addition makes clear the advantage to lessors in agreeing not to withhold consent unreasonably: 'Where the lease complies with this section, the lessor may recover the rent as it becomes due under the terms of the lease and at the same time has no obligation to retake possession and relet the property in the event the lessee abandons the property. This allocation of the burden of minimizing the loss is most useful where the lessor does not have the desire, facilities, or ability to manage the property and to acquire a suitable tenant and for this reason desires to avoid the burden that Section 1951.2 places on the lessor to mitigate the damages by reletting the property.' (Cal. Law Revision Com., com. § 1951.4.)

"Thus, the California Legislature has considered the situation of lessors contracting for the right (and then exercising it) of unreasonably withholding consent to an assignment. That it has provided an increased measure of damages (and thus an incentive) to those who forego this right is a clear recognition that the contractual right does exist.

"While we harbor great reverence for the doctrine of stare decisis and do not lightly reject the holdings in *Cohen* and *Schweiso,* we respectfully suggest that it is not for this court either in *Cohen* or *Schweiso* or the case at

bar to imply a requirement of reasonableness when the Legislature specifi-
cally refused to do so 14 years earlier. [Fn. omitted.]

"To rewrite this contract (as appellant would have us do) for the benefit
of one who was not an original party thereto, and to the detriment of one
who stands in privity with one who was, and to hold that there is a triable
issue of fact concerning whether respondents unreasonably withheld their
consent when they had already contracted for that right, creates only mis-
chief by breeding further uncertainty in the interpretation of otherwise un-
ambiguously written contracts. To so hold only encourages needless future
litigation.

"We respectfully suggest that if California is to adopt the minority rule
and reject the majority rule which recognizes the current proviso as valid,
unambiguous and enforceable, that it do so by clear affirmative legislative
action. To so defer to the legislative branch, protects not only this contract
but 'those tens of thousands of landlords, tenants and lawyers who have
relied on our unbroken line of judicial precedent.' (*Homa-Goff Interiors,
Inc.* v. *Cowden, supra,* 350 So.2d at p. 1041.)"

I would affirm the judgment.

Mosk, J., concurred.