MORGAN PRODUCTS, LTD., Plaintiff-Appellant,†

v.

PARK PLAZA OF OSHKOSH, INC., Defendant-Respondent.

Court of Appeals

*No. 98–2615. Submitted on briefs May 21, 1999.—Decided June 30, 1999.*

(Also reported in 598 N.W.2d 626.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert M. Charles* of *Liebmann, Conway, Olejniczak & Jerry, S.C.* of Green Bay.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James J. Williamson* of *Dempsey, Magnusen, Williamson & Lampe, LLP* of Oshkosh.

Before Snyder, P.J., Brown and Anderson, JJ.

ANDERSON, J.   Morgan Products, Ltd. entered into a five-year lease for office space with Park Plaza of Oshkosh, Inc. (Park Plaza). The lease provided that Morgan Products could not "sublease any part or all of the [office] Suite without [Park Plaza's] prior written consent." Morgan Products attempted to sublease its office space, but Park Plaza refused to consent to the

proposed subtenant. Morgan Products brought suit alleging that Park Plaza's reasons for refusing to consent were commercially unreasonable and that it breached the lease. The circuit court disagreed and granted summary judgment for Park Plaza. Morgan Products appeals the summary judgment against it and we affirm.

Park Plaza Mall is a downtown Oshkosh, Wisconsin, office and retail shopping mall located along the Fox River. Park Plaza owns and operates the mall. Morgan Products leases very desirable, river-front office space from Park Plaza.

Morgan Products experienced financial difficulties and sought to reduce its expenses by subletting its mall space. Morgan Products' lease permits subletting with the owner's consent.[1] So, Morgan Products discussed the idea with Park Plaza and received its consent to search for a subtenant.

Morgan Products found a potential subtenant, Workforce Development Center (Workforce). Workforce is a consortium of agencies that provides educational and vocational training to welfare recipients and other low income individuals. When Morgan Products proposed to Park Plaza that Workforce should become the subtenant, Park Plaza refused. Unbeknown to Morgan Products, Workforce was also negotiating with Park Plaza to rent other office space in the mall. In fact, at that time Park Plaza was wait-

---

[1] The lease contains the following provision for subleases:

> Assignment; Sublease; Change in Control. Tenant shall not assign, sell, pledge, mortgage or otherwise encumber or transfer this Lease . . . or sublease any part or all of the Suite without Landlord's prior written consent . . . . Said consent shall not be unreasonably withheld or delayed.

ing for Workforce to approve a draft lease for this other office space.

Workforce had informed Park Plaza that it needed 30,000 square feet of office space. Park Plaza's proposal was for an office with this amount of square footage renting at $17,500 a month. Morgan Products' office space had 16,000 square feet and rented for $14,400 a month. Workforce agreed to take over Morgan Products' lease.

Park Plaza refused to permit Morgan Products to sublease to Workforce. It reasoned that Workforce was currently negotiating with it for another mall space, Workforce had different usage requirements than was permitted in Morgan Products' lease,[2] and it did not consider Workforce an appropriate tenant for Morgan Products' office space.

Morgan Products brought a declaratory judgment action against Park Plaza, seeking a determination that Park Plaza breached the lease by declining Workforce's subtenancy for commercially unreasonable reasons. Subsequently, Morgan Products moved for summary judgment. The court denied Morgan Products' motion and instead granted summary judgment to Park Plaza. Morgan Products appeals.

On appeal, Morgan Products raises two principal arguments. First, it argues that Park Plaza should not be allowed to raise additional reasons to justify declining Workforce as a subtenant. It argues that Park Plaza should be limited to the three justifications it

_____

[2] The lease permits Morgan Products to use the 16,000 square-foot Park Plaza space as an office and a showroom. While Workforce was negotiating for office space with Park Plaza, Workforce stated that it required 30,000 square feet to accommodate its nine agencies, 110 employees, classrooms, conference rooms and approximately 100 offices.

gave at the time it refused to consent to Workforce's subtenancy. Second, Morgan Products contends that Park Plaza's reasons for refusing to consent are commercially unreasonable and violate the lease. We disagree.

We review summary judgments de novo, employing the same methodology as the trial court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). This methodology is well known and need not be repeated here, except to note that summary judgment is appropriate if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* § 802.08(2), STATS.; *see also M&I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175, 182 (Ct. App. 1995). Although Morgan Products moved the court for summary judgment, the court denied its motion and instead, by the court's own motion, granted summary judgment in favor of Park Plaza. *See* § 802.08(6). Because the facts are essentially undisputed, we may properly determine whether Park Plaza is entitled to judgment as a matter of law. *See State Bank v. Elsen*, 128 Wis. 2d 508, 511–12, 383 N.W.2d 916, 917–18 (Ct. App. 1986).

Morgan Products argues that Park Plaza should be limited to the initial three reasons it gave for refusing to consent to Workforce's subtenancy. At that time, Park Plaza stated that it did not think Workforce was an appropriate tenant for Morgan Products' office space, that it was currently conducting separate negotiations with Workforce for other office space, and that Workforce's proposed usage for the space would violate the "use" terms in Morgan Products' lease. Morgan Products complains that Park Plaza's list of explana-

tions has now expanded to nine, and these additional reasons should not be considered by this court. Although it offers no authority to support this argument, Morgan Products rationalizes that if additional reasons are allowed to be continuously added, a party will never be able to get a summary judgment because the facts will remain unsettled.

Morgan Products objects to what it characterizes as seven new reasons presented by Park Plaza; however, we do not find these to be *new* reasons. On the contrary, these statements are detailed explanations of the original reasons offered by Park Plaza.

For example, Park Plaza stated that Workforce was not an appropriate tenant for Morgan Products' office space. Later, Park Plaza provided more details with the following three statements: (1) Workforce's presence might devalue the other prime office spaces along the river, which could result from its clientele walking through the mall because of the distance between the office and the bus stop and the limited availability of parking; (2) it was concerned about Workforce's ability to pay the rental rate; and (3) there was the possibility that Workforce would need to remodel the office space.

Park Plaza also said that because it was separately negotiating with Workforce, it would not permit the sublease. It amplified on this assertion with these additional facts: Workforce would not lease the office space proposed in Park Plaza's draft lease; Morgan Products had received a special deal designed to lure similar tenants to the mall; and this special deal should not be applicable to Workforce because it is a different type of tenant.

Lastly, Park Plaza's assertion that Workforce's usage of the office space might violate the "use" terms

of the lease was explained when it added the detail that Workforce required significantly more square footage than Morgan Products' office space provided. We conclude that Morgan Products mistakes these more detailed explanations of the original three reasons given by Park Plaza as new assertions.

Generally, a landlord-tenant relationship is one which requires the parties to deal with each other in good faith and in a commercially reasonable manner. *See Kendall v. Ernest Pestana, Inc.*, 709 P.2d 837, 845 (Cal. 1985) (en banc). Morgan Products contends that Park Plaza failed to do this. It argues that Park Plaza's reasons for refusing to consent to Workforce's subtenancy are "a commercially unreasonable expression of a personal distaste for a 'less desirable' tenant." Morgan Products bases its "personal distaste" argument on the fact that Workforce's clientele may be welfare recipients or low income individuals. Because of this, it theorizes that behind Park Plaza's stated reasons lies a desire to avoid giving Workforce a prime, river-front office near other prestigious renters instead of the isolated office space suggested in the draft lease.

Both parties agree to the standards upon which to evaluate if Park Plaza's reasons for refusing the proposed subtenancy are commercially reasonable. "A reason for refusing consent, in order for it to be reasonable, must be objectively sensible and of some significance and not be based on mere caprice or whim or personal prejudice." RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 15.2 cmt. g (1977). The tenant bears the burden of proving that the reasons advanced by the landlord are unreasonable. *See id.*

Some of the factors a landlord may reasonably consider when deciding whether or not to sublease are the "financial responsibility of the proposed assignee; suitability of the use for the particular property; legality of the proposed use; need for alteration of the premises; and nature of the occupancy, i.e., office, factory, clinic, etc." *Kendall*, 709 P.2d at 845. RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 15.2 cmt. g, illus. 7 exhibits a situation where a landlord's refusal to consent to a sublease may be reasonable:

> L leases commercial property to T, the lease requiring L's consent to any assignment or sublease. L wanted T personally as a tenant because he [or she] thought T's presence on the leased property would improve the commercial tone of the area and L owned the commercial property nearby. L gave T quite favorable terms to induce T to locate his [or her] business on the leased property. T requests L's permission to assign the lease to T1, who is also a successful business[person]. It may be found that L's refusal to consent under the circumstances is reasonable.

On the other hand, it is not commercially reasonable if the sole basis for a consent denial is so that a landlord can charge a higher rent than the contract rent. *See Kendall*, 709 P.2d at 845. Nor may a landlord deny consent solely because of personal taste, convenience or sensibility. *See id.* This is illustrated in the following scenario:

> L leases offices to T, the lease requiring L's consent as a condition to a sublease. T proposes to sublease to Planned Parenthood, and provides evidence of that organization's financial responsibility and of its careful and orderly use of leased property.

239

L, a strict religious organization, refuses to consent to the sublease because its members are unalterably opposed to birth control of any type. It may be found that refusal to consent to the sublease is unreasonable, and T may sublease.

RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 15.2 cmt. g, illus. 6.

██

Whether a landlord's reasons for denying consent are commercially reasonable is to be determined by the trier of fact. *See Broad & Branford Place Corp. v. J.J. Hockenjos Co.*, 39 A.2d 80, 82 (N.J. 1944). However, if the facts are undisputed, a court may determine the reasonableness; this is permissible when only one inference may be drawn from the facts and there is no question for a jury. *See id.* Such a situation is present here. Both parties agree that the material facts are not at issue and that the case is appropriate for summary judgment.

Morgan Products is burdened with proving that Park Plaza's reasons for the consent denial are unreasonable. We determine that this burden has not been met. The crux of Morgan Products' argument is that Park Plaza's reasons are pretextual for a hidden prejudice against Workforce. Yet, Park Plaza had a lease pending with Workforce at the time of Morgan Products' sublease request. This fact contradicts Morgan Products' argument. Park Plaza does not appear to be prejudiced against having Workforce as a mall tenant; it just objects to Workforce subleasing Morgan Products' smaller, river-front office space.

██

Park Plaza's reasons for denying its consent to the Workforce sublease are commercially reasonable. Considering an applicant to not be the appropriate tenant

for a prestigious location is a legitimate commercial concern for a landlord. *See Time, Inc. v. Tager*, 260 N.Y.S.2d 413, 415–16 (N.Y. Civ. Ct. 1965) ("The owner of a prestige building, in order to maintain its status and desirability, may well require that space in its building be rented in substantial blocs lest the premises be Balkanized so that it becomes generally known as a veritable rabbit-warren of 'holes-in-the-wall' and rented desk spaces."). Likewise, considering the suitability of a tenant's proposed use for a property and its financial ability to pay the rent are also legitimate commercial concerns. *See Kendall*, 709 P.2d at 845.

In conclusion, we determine that summary judgment was properly granted to Park Plaza. We reject Morgan Products' assertion that Park Plaza continually created new reasons for denying consent to the sublease. Also, we conclude that Morgan Products failed to demonstrate that any of these reasons were commercially unreasonable. Accordingly, we affirm the summary judgment in favor of Park Plaza.

*By the Court.*—Judgment affirmed.