[Civ. No. 7425. Fifth Dist. Sept. 28, 1984.]

DON ROSE OIL CO., INC. et al., Plaintiffs and Appellants, v.
DALE LINDSLEY et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

\*Parts I through VI are not published as they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

**COUNSEL**

Shapiro, Laufer, Posell & Close, Shapiro, Laufer, Krane, Jacobson & Posell, Kenneth P. Roberts, Kloster, Ruddell, Hornberg & Cochran and Gary Ruddell for Plaintiffs and Appellants.

Latham & Watkins, William J. Meeske, Karen R. Leviton and M. G. Brookshier for Defendants and Appellants.

**OPINION**

**ANDREEN, Acting P. J.**—On June 13, 1979, Don Rose Oil Co., Inc. and Don Rose (Rose) filed a complaint against R. C. Gifford, Inc., R. C. Gifford (Gifford), Dale Lindsley and Shell Oil Company (Shell, unless the context indicates otherwise, includes Lindsley and Shell Oil Company) alleging five causes of action. The first, second and fifth causes of action were against Gifford. These were settled prior to trial. The third and fourth causes of action were directed against Shell. The third requested declaratory relief. The fourth cause of action alleged interference with Rose's existing and prospective "business rights."

Shell filed a cross-complaint against Rose for declaratory relief.

The trial court granted summary judgment against Rose on his third cause of action and in favor of Shell on its cross-action for declaratory relief. (This is the subject of the cross-appeal, the discussion of which is in the published portion of this opinion.)

Jury trial commenced on May 10, 1982, and continued for three weeks on the remaining cause of action against Shell for intentional interference with existing and prospective business advantage. At the commencement of trial, Shell moved to dismiss the action on the ground that the subject was under exclusive federal jurisdiction. The motion was denied.

The jury returned a verdict of $417,319.20, $341,819.20 for compensatory damages and $75,500 for punitive damages ($500 against Lindsley, $75,000 against Shell).

## I. FACTS*

. . . . . . . . . . . . . . . . . . . . . . .

## VII. CROSS-APPEAL

Rose's third cause of action sought a declaration that Shell was obligated to consent to the conditional assignment of a portion of Gifford's jobber contract with Shell unless Shell had just cause to withhold its consent. Shell's cross-complaint sought a declaration that it need not consent to the assignment of the petroleum franchise. ■ Declaratory relief is an appropriate vehicle to test the issues if they can be determined as a matter of law. (*Arroyo* v. *Regents of University of California* (1975) 48 Cal.App.3d 793, 795 [121 Cal.Rptr. 918].)

The trial court granted summary judgment in favor of Shell relating to the issue. It found that Rose was not a third party beneficiary and that he was not an assignee of Gifford. Therefore, Rose had no standing to assert rights under the Shell-Gifford contract.[4]

## A. FACTS

It is undisputed that the Shell-Gifford agreement contained a provision for an assignment with Shell's consent. For purposes of the summary judgment proceeding, Shell conceded that such consent was not to be withheld unreasonably, and that Rose had an agreement with Gifford that after payment of the purchase price in full, Gifford would assign the Visalia franchise to

---

*See footnote, *ante,* page 752.

[4] The court below did not base its decision on any right of Shell to first refusal. Shell makes no argument on appeal that the provision in the Shell-Gifford agreement giving Shell the right of first refusal if it sold its business was sufficient for it to prevail upon the motions for summary judgment.

Rose. The latest Shell-Gifford agreement was executed April 1, 1976, after the Gifford-Rose agreement was entered into (in May 1972).

After the instant litigation was commenced, Gifford made a partial assignment (of the Visalia operation) to Rose, "conditioned upon receiving prior written approval of the Shell Oil Company to said partial assignment and until and unless said written approval by Shell Oil Company is received, this partial assignment is of no force or effect." The provision requiring written approval by Shell was consistent with the Shell-Gifford agreement which provided: "Neither this Contract nor any claim against Shell arising directly or indirectly out of or in connection with this Contract shall be assignable by Buyer or by operation of law without the prior written consent of Shell."

## B. THIRD PARTY BENEFICIARY THEORY

Civil Code section 1559 provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." The word "expressly" in Civil Code section 1559 has by judicial interpretation now come to mean the negative of incidentally. (*Gilbert Financial Corp.* v. *Steelform Contracting Co.* (1978) 82 Cal.App.3d 65, 70 [145 Cal.Rptr. 448].) ■ The effect of Civil Code section 1559 "is to exclude enforcement by persons who are only incidentally or remotely benefited." (*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 590 [15 Cal.Rptr. 821, 364 P.2d 685].)

The court below had before it portions of the deposition of James A. McNeary, a Shell representative. It established that McNeary read a notice of bulk sales from Gifford to Rose, which informed him of a sale between the parties. He spoke to Mr. Gifford who informed him that he had sold the plant to Rose, and that Rose "was going to work off [Gifford's] contract." There was no indication below that Shell knew that Gifford intended to assign his franchise to Rose (as distinguished from having Rose act as a subjobber through Gifford) at the time of the execution of the 1976 Shell-Gifford agreement. There was thus no triable issue of fact regarding Shell's being put on notice that Gifford intended for the assignment provision to carry out his contract with Rose to assign his franchise.

■ A review of the authorities establishes that the court below was correct in holding that Rose was not the beneficiary of the Shell-Gifford agreement.

In *Lucas* v. *Hamm, supra,* 56 Cal.2d 583, one Emmick directed his attorney, the defendant, to prepare his will in a certain way to benefit the

plaintiffs. Emmick died and it was discovered that the will was not drafted correctly and as a result the plaintiffs lost a considerable sum of money. The plaintiffs were held to be third party beneficiaries of the contract between Emmick and his attorney. The plaintiffs were more than incidentally benefited and the attorney (promisor) understood that Emmick (promisee) had an intent to benefit them. The court stated at page 591: "Insofar as intent to benefit a third person is important in determining his right to bring an action under a contract, it is sufficient that the promisor must have understood that the promisee had such intent. (*Cf.* Rest., Contracts, § 133, subds. 1(a) and 1(b); 4 Corbin on Contracts (1951) pp. 16-18; 2 Williston on Contracts (3d ed. 1959) pp. 836-839.) No specific manifestation by the promisor of an intent to benefit the third person is required."

In *Gilbert Financial Corp.* v. *Steelform Contracting Co., supra,* 82 Cal.App.3d 65, Gilbert entered into a construction contract with Appel for the construction of a building. Appel subcontracted work out to Steelform. It was held that Gilbert was a third party beneficiary of the contract between Appel and Steelform even though it was not specifically named. Clearly, the subcontract was to assist Appel in its duty to construct the building. Steelform (promisor) must have understood that it was undertaking Appel's (the promisee) duties for a phase of its obligation to construct the building.

In *Southern Cal. Gas Co.* v. *ABC Construction Co.* (1962) 204 Cal.App.2d 747 [22 Cal.Rptr. 540], ABC entered into a contract with the Los Angeles Flood Control District for installation of a storm drain. The contract contained a provision that ABC agreed to maintain, support and be responsible for all damage to all utility pipelines encountered during the drain construction. During this construction, an explosion occurred and a Southern California Gas Company pipeline was damaged. Southern California attempted to sue ABC under a third party beneficiary theory. It was held that it was not a third party beneficiary of the ABC-Los Angeles Flood Control District contract. The contract was not made for the benefit of Southern California in that the provisions—ABC would not damage pipelines and if they did they would be responsible for the damage—were made for the protection of the flood control district and were not intended or contemplated to give contractual rights to third persons such as Southern California.

In *Martinez* v. *Socoma Companies, Inc.* (1974) 11 Cal.3d 394 [113 Cal.Rptr. 585, 521 P.2d 841], the defendants agreed with the United States Government to provide job training and jobs for certain low-income persons. The defendants breached this contract. Plaintiffs were allegedly members of a class certified as disadvantaged and qualified for employment under the contract. The court held that plaintiffs were only incidental benefi-

ciaries and could not sue under the contract. The contract did not state any liabilities to third parties and the intended jobs were not gifts but means of executing the public purpose of finding jobs for the disadvantaged. "The fact that plaintiffs were in a position to benefit more directly than certain other members of the public from performance of the contract does not alter their status as incidental beneficiaries." (*Id.*, at p. 406.)

In his reply brief, Rose relies on *Watson* v. *Aced* (1957) 156 Cal.App.2d 87 [319 P.2d 83] as a case "substantially similar to the present case." Plaintiff Watson was employed by the defendant to sell his real property. He was also employed by the Foxes to sell their real property. Plaintiff arranged an exchange of properties between the defendant and the Foxes (exchange agreement). Plaintiff also entered into separate contracts with the defendant and the Foxes so that he would be paid a commission upon the close of escrow. Defendant arbitrarily refused to perform the exchange agreement. Plaintiff sued the defendant to recover his commission which would have been owed him by the Foxes. The court held that plaintiff was a third party beneficiary of the exchange agreement.

The exchange agreement mentioned that plaintiff was to receive a commission upon its completion. This was held to be sufficient to inform defendant that plaintiff would lose money from the Foxes if the exchange agreement was not performed. (*Watson* v. *Aced, supra,* 156 Cal.App.2d at p. 91.) *Watson* would be good authority for Rose's position if Shell had known of his true agreement with Gifford at the time of the execution of the 1976 Shell-Gifford agreement. However, it did not; Shell was led to believe that Rose would subcontract from Gifford. Shell was not in any way put on notice that Gifford had a duty to assign a portion of his franchise to Rose when the latter completed his payments of the purchase price. It is this lack of knowledge of Gifford's responsibilities that distinguishes *Watson* from the case at bar. (*Id.*, at p. 92.)

As the above cases illustrate, the intention that a contract is to benefit a third party must be clear; the fortuitous fact that one may have suffered detriment by reason of a breach of a contract does not in and of itself give one a cause of action. Shell's promise that it would not withhold its consent to a sale unreasonably was made for the benefit of Gifford, rather than some third person. The provision assured the marketability of Gifford's interest in the contract. Any benefit to an amorphous class of potential assignees was unintended and incidental.

We conclude the Shell-Gifford contract did not include Rose as a third party beneficiary.

## C. Standing

■ The court below found that Rose had no standing to enforce the Shell-Gifford contract provision regarding assignment since he was not an assignee. As noted above, the Gifford-Rose assignment was conditioned upon consent by Shell. This was necessary because an assignment without Shell's consent might trigger an attempt by Shell to terminate its agreement with Gifford.

The court presumably used the word "standing" as meaning real party in interest. ■ As provided in Code of Civil Procedure section 367, "[e]very action must be prosecuted in the name of the real party in interest . . . ." It has long been established that an assignee is a real party in interest within the meaning of section 367. (*Quan Wye* v. *Chin Lin Hee* (1898) 123 Cal. 185 [55 P. 783].)

■ Shell may be able to establish that it acted reasonably in withholding its consent. If it does, then it may be said that such a finding proves that Rose had no right to the relief prayed for. Meanwhile, however, he cannot be denied access to the courts. The rule is one of necessity. Rose had to sue Gifford in the instant action to force it to request Shell to consent to the assignment; Gifford has no interest in prosecuting an action against Shell on Rose's behalf. Indeed, Gifford might benefit if Rose fails to obtain relief. If Rose cannot obtain redress, Gifford may be able to keep the franchise.

The trend in the law is toward the assignability of contract rights. (*Cohen* v. *Ratinoff* (1983) 147 Cal.App.3d 321 [195 Cal.Rptr. 84]; *Prestin* v. *Mobil Oil Corporation* (9th Cir. 1984) 741 F.2d 268.) Starting with the end of World War II, franchises have increased in number and value. The law should accommodate itself to new forms of business endeavor and meet the reasonable expectations of franchisors, franchisees and their respective successors in interest. To do otherwise would deny a substantial segment of the economy access to justice.

Although the assignment was conditional, the condition is totally within Shell's control. Shell's position is tantamount to contention that because of the conditional nature of the assignment, Rose cannot sue it without its consent—a concept so outrageous that extensive and computer-assisted research of all reported cases in all 50 states and in all federal courts has not located a single case where such an argument has been advanced.

It is inconsistent of Shell to admit for the purposes of the motion for summary judgment that it may not refuse consent unreasonably, but argue

that a conditional assignment—subject only to Shell's consent—creates no rights in the assignee.

Whether or not Shell has reasonable grounds for withholding consent is a factual question.

The motion for summary judgment should not have been granted.

### VIII. CONCLUSION

The judgment in favor of Rose against Shell is affirmed. The summary judgment in favor of Shell is reversed, and the cause remanded.

Martin J., and Quaschnick J.,* concurred.

A petition for a rehearing was denied October 26, 1984, and the petition of defendants and appellants for a hearing by the Supreme Court was denied December 13, 1984.

---

*Assigned by the Chairperson of the Judicial Council.