SEA AIR SHUTTLE CORPORATION d/b/a VISS and Sea Air Shuttle Corporation of the Virgin Islands, Plaintiffs,

v.

The VIRGIN ISLANDS PORT AUTHORITY and Caribbean Airboats, Inc.

Civ. A. No. 1991–0009.

District Court, Virgin Islands, D. St. Croix.

Feb. 25, 1992.

Andrew C. Simpson, Britain H. Bryant, Christiansted, V.I., for plaintiffs.

Carey–Anne Moody, Christiansted, St. Croix, V.I., Maria Tankenson Hodge, St. Thomas, V.I., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge, Sitting by Designation.

This action concerns a dispute over the purported award[1] by defendant Virgin Islands Port Authority ("VIPA") of an exclusive lease to defendant Caribbean Airboats, Inc. ("CAI") to use seaplane ramps owned by VIPA. Defendant CAI moves the Court to dismiss the remaining counts of the second amended complaint[2] by arguing that plaintiff Caribbean Airlines Services, Inc. ("CAS") is not a bona fide plaintiff and plaintiffs Sea Air Shuttle Corporation and Sea Air Shuttle Corporation of the Virgin Islands (referred to collectively as "plaintiff Sea Air") lack standing to appear before this Court. Plaintiff Sea Air opposes CAI's motion by arguing that it possesses standing by virtue of its status as a real party in interest and by relying on the Restatement (Second) of Contracts. For the reasons stated below, I shall deny defendant's motion to dismiss for lack of standing.

## I. INTRODUCTION

Prior to September of 1989, when Hurricane Hugo struck the United States Virgin Islands, a seaplane service was operated by Virgin Islands Seaplane Shuttle ("VISS"). VISS provided passenger air service between downtown Christiansted, St. Croix, downtown Charlotte Amalie, St. Thomas, downtown San Juan, Puerto Rico, downtown Roadtown, Tortola, and St. John. As a result of destruction caused by Hurricane Hugo, VISS went out of business and seaplane service between the islands was interrupted. Among the physical structures that VISS used prior to its demise were seaplane ramps on St. Thomas and St. Croix owned by VIPA.

In early 1990, VIPA issued a request for proposals for the lease of the seaplane ramps on St. Thomas and St. Croix. Caribbean Airline Services, Inc. ("CAS") was one of eight companies that presented a proposal to VIPA before the June 22, 1990 deadline to submit lease proposals. Sea Air did not submit a proposal. The CAS proposal was one of three that the staff of VIPA recommended to VIPA's Governing Board for additional consideration. The two other proposals recommended for further consideration were those submitted by American Aircraft Management Co. and defendant CAI.

On June 23, 1990, Anthony Tirri, president of CAS, and Arnaldo Deleo, president of Sea Air, entered into an oral agreement in which CAS agreed to assign its interest in the VIPA lease proposal to Sea Air. See Deleo Aff. at ¶ 4. On August 29, 1990, the three finalists—CAS, American Aircraft Management Co., and CAI—made presentations to the Governing Board of VIPA. CAS and Sea Air presented a proposal together and CAS submitted a written state-

---

**1.** Plaintiffs, Sea Air Shuttle Corporation d/b/a VISS and Sea Air Shuttle Corporation of the Virgin Islands, contend that an exclusive lease has been awarded, while defendants assert that only an opportunity to negotiate a lease has been granted. As this issue has no effect upon this decision, the Court offers no opinion on whether a lease has been awarded. For purposes of convenience in this opinion, the Court will refer to a lease as if one exists between defendants Virgin Islands Port Authority and Caribbean Airboats, Inc. This mere use of convenience in expression should not be interpreted as a conclusion that a lease in fact exists between the two defendants.

**2.** By Order of October 28, 1991, the Court dismissed counts 3, 4, 5, and 6 of the second amended complaint. The remaining counts are thus counts 1 and 2 of the second amended complaint. Plaintiffs have moved to amend the second amended complaint to add additional counts. See Plaintiffs Motion To File Third Amended Complaint. Plaintiffs motion to file a third amended complaint does not affect the instant decision and shall be addressed in a separate opinion.

ment informing VIPA that "CAS [had] agreed to transfer its lease of the seaplane bases ..." *See* Sea Air's Opposition to CAI's Motion to Dismiss at Exhibit A. The proposal submitted by CAS and Sea Air made clear that Sea Air would operate the seaplane service if VIPA approved the CAS proposal. The proposal submitted by CAS and Sea Air specifically stated:

> [t]wo sister corporations have been established to operate VISS in Puerto Rico and the Virgin Islands for logistical and financial reasons. SASH [Sea Air Shuttle Corporation] will operate VISS using initially Mallard aircraft leased from CAS. The new airline will operate with many ex-old VISS employees some of whom have already been employed by SASH. The organization's officers and managers will be: A. Deleo, President CEO (EAL); H. Worman, Director Maintenance (Ex VISS); J.S. Jervis, Director Flt. Operations (Ex VISS); J. Coto, Chief Pilot (Ex VISS); John Richards, Shuttle Director (Ex VISS).

*Id.*

The individuals representing CAS and Sea Air respectively at the August 29, 1990 meeting were Anthony Tirri, president of CAS, and Arnaldo Deleo, president of Sea Air. During the CAS/Sea Air presentation, Mr. Tirri stated:

> As President, we [CAS] purchased the assets of V.I. Seaplane Shuttle when they went into bankruptcy for the purpose of taking over and started Sea Air International. Caribbean Airline Services will be the leasing corporation which will own and lease aircraft, the same type as previously used ...

*See* Sea Air's Opposition to CAI's Motion to Dismiss at Exhibit B, ¶ 10 (Minutes of the VIPA Board Meeting of August 29, 1990). In the August 29, 1990 presentation, CAS and Sea Air made clear that Sea Air would operate the seaplane service, while CAS would operate as the lessor of the seaplanes.

On September 10, 1990, CAS and Sea Air agreed to supersede the June 23, 1990 oral agreement between Tirri and Deleo to assign the lease proposal. The September 10,

1990 stockholders' agreement entered into by Sea Air Shuttle Corporation, CAS, Anthony C. Tirri, Salvatore J. Labate, Arnaldo Deleo and other Sea Air Shuttle Corporation investors ("the stockholders' agreement") provided that CAS would transfer all of its rights in the seaplane ramp bid or lease to Sea Air Shuttle Corporation of the Virgin Islands *in the event* that the CAS bid was accepted by VIPA. *See* Sea Air's Opposition to CAI's Motion to Dismiss at Exhibit C.

By letter of October 4, 1990, Robert S. Griggs, counsel for Sea Air, informed Eric Dawson, Commissioner of VIPA, that the stockholders' agreement had been signed and that the agreement's assignment provisions were contingent on VIPA's acceptance of the CAS proposal. The October 4 letter included, *inter alia,* (1) a request that VIPA treat the CAS proposal as a Sea Air proposal; and (2) information requested by VIPA regarding Sea Air shareholders. The letter listed Sea Air Shuttle Corporation of the Virgin Islands' shareholders as Arnaldo Deleo, Roland H. Moore, Robert S. Griggs, Betty F. Griggs, Peter Nelson, Lewis F. Huck, Virginia Huck, Irene Cerqueira, Anthony C. Tirri, and Salvatore J. Labate. Also, the October 4 letter represented that Sea Air Shuttle Corporation of the Virgin Islands and Sea Air Shuttle Corporation possessed the same shareholders and stated that Anthony C. Tirri was the sole shareholder of CAS.

On November 26, 1990, pursuant to a request by VIPA, Sea Air ratified the CAS' June 18 proposal to lease the seaplane ramps. At no time did VIPA explicitly affirm or reject the validity of the purported assignment made by CAS to Sea Air or the acceptability to VIPA of the arrangement contemplated by CAS and Sea Air. VIPA's conduct, however, evidenced an intention to consider the CAS/Sea Air proposal on the terms contemplated by CAS and Sea Air.

On November 28, 1990, VIPA's Governing Board voted unanimously to negotiate for leases of the seaplane ramps with defendant CAI. Plaintiff Sea Air filed a complaint against CAI and VIPA in the Territo-

rial Court of the Virgin Islands on January 23, 1991. This case was dismissed for lack of subject matter jurisdiction. In February of 1991, Sea Air filed the instant action.

## II. DISCUSSION

### A. *CAS' Conditional Assignment Of The Lease Proposal.*

Defendant CAI argues that plaintiff Sea Air does not possess standing because Sea Air has failed to produce evidence it received an assignment of rights in the CAS proposal submitted to VIPA.[3] The only document produced by plaintiffs that references an assignment is the stockholders' agreement entered into on September 10, 1990 by Sea Air Shuttle Corporation, CAS, Anthony C. Tirri, Salvatore J. Labate, Arnaldo Deleo, and Sea Air Shuttle Corporation investors. In relevant part, the stockholders' agreement states:

> [i]n the event that the bid submitted by CAS on June 18, 1990, to the VIPA for the lease of ground facilities in St. Croix and St. Thomas is accepted, CAS will transfer all of its rights under said bid or lease, as the case may be, to the VI Corporation referred to in paragraph 3 below, without additional consideration, subject to the following conditions ...

*See* CAI's Exhibit A at Paragraph 1(e). Defendant CAI correctly argues that the agreement by its own terms simply creates an agreement to transfer or assign rights conditioned on the happening of a future event.

■ Section 225 of the Restatement (Second) of Contracts states:

> (1) *Performance of a duty subject to a condition cannot become due unless*

*the condition occurs or its non-occurrence is excused.*

(2) Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.

(3) Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur.

Restatement (Second) of Contracts § 225.[4] Under Section 225, it is established that conditional assignments cannot be considered legally binding absent the happening of the condition. In the instant matter, VIPA did not accept CAS' proposal to lease the seaplane ramps. Therefore, Sea Air cannot successfully argue that it possesses a valid assignment of CAS' interest in the CAS bid. Although it is clear that the stockholders' agreement is not a valid assignment of rights under Virgin Islands law, it does not follow *a fortiori* that plaintiffs lack standing. The question the Court must address is whether, absent a valid assignment, Sea Air possesses standing in this action.

### B. *Sea Air's Standing.*

■ Defendant CAI argues that plaintiff CAS is not a bona fide plaintiff[5] and plaintiff Sea Air lacks standing to prosecute the instant action. The requirement that a litigant possess standing in order to legally challenge an action "subsumes a blend of constitutional requirements and prudential considerations." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., et al.,* 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), *citing Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45

---

3. I note that plaintiffs rely on this assignment as their basis for standing in the second amended complaint. In a conference held on May 31, 1991, the Court stated that the stockholders agreement did not create an assignment, but rather created a conditional assignment. Pursuant to plaintiffs assertions' that an assignment occurred, the Court ordered plaintiffs to produce evidence of the purported assignment on or before November 20, 1991. *See* Order of November 14, 1991.

4. Absent a local law to the contrary, the common law in the Virgin Islands is based on the American Law Institute's Restatements of Law. *see* 1 V.I.C. § 4.

5. I note that the Court granted the unopposed motion of plaintiffs Sea Air Shuttle Corporation and Sea Air Shuttle Corporation of the Virgin Islands to dismiss CAS as a plaintiff. Accordingly, I need only address defendant CAI's argument that plaintiffs Sea Air Shuttle Corporation and Sea Air Shuttle Corporation of the Virgin Islands lack standing to bring this action.

L.Ed.2d 343 (1975). In order to possess standing, plaintiffs Sea Air Shuttle Corporation and Sea Air Shuttle Corporation of the Virgin Islands must demonstrate at a minimum (1) that they have suffered an injury in fact, (2) that the injury was caused by defendants' actions, and (3) that the injury is likely to be redressed by a favorable court decision. *Hospital Council of Western Pennsylvania v. City of Pittsburgh,* 949 F.2d 83, 86–87 (3d Cir. 1991) *citing Whitmore v. Arkansas,* 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1923–24, 48 L.Ed.2d 450 (1976).[6]

Defendant CAI argues that since no valid assignment of rights in CAS' proposal or bid occurred, it follows that plaintiffs possess no standing. CAI premises its position on the conclusion that without an assignment plaintiffs cannot demonstrate an injury in fact that flows from the actions of VIPA and CAI. *See* CAI's Motion To Dismiss For Lack Of Standing at 6.[7]

■ CAI's argues that Sea Air lacks standing because no valid assignment between CAS and Sea Air occurred and therefore Sea Air suffered no injury in fact.

"This interest in the injury of the party actually before the court is also effectuated through the prudential guideline that 'the plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Health Research Group v. Kennedy,* 82 F.R.D. 21, 25 (D.D.C.1979), *quoting Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). In other words, CAI's argument invokes the prudential, discretionary limit federal courts have imposed on their exercise of Article III powers—the rule against *jus tertii* standing.[8] CAI argues against standing by relying on the general rule that a plaintiff (Sea Air) must assert its own legal rights, rather than resting on the rights of a third party (CAS). *See Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico,* 906 F.2d 25 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990) (citations omitted).

*Playboy Enterprises* recognized, however, that the rule prohibiting *jus tertii* standing is not absolute.

The Supreme Court has recognized the ability of plaintiffs to raise the rights of others in many cases. "[T]here are situations where competing considerations

---

**6.** Sea Air also argues that CAI "erroneously characterizes its motion as one to dismiss for 'lack of standing,'" when "the motion is actually one to dismiss on the theory that Sea Air is not the real party in interest." *See* Sea Air's Opposition To Caribbean Airboats' Motion To Dismiss at 5. Sea Air correctly identifies an intersection between the doctrine of standing and the question of whether a party is a real party in interest under Fed.R.Civ.P. 17. "In the realm of public law, when governmental action is attacked on the ground that it violates private rights or some constitutional principle, the question whether the challenger is a proper party plaintiff to assert the claim is rarely analyzed in terms of real party in interest or capacity principles. Instead, the courts have tended to rely on the judgemade doctrine of standing to sue. To the extent that standing in this context is understood to mean that the litigant actually must be injured by the governmental action that he is assailing, then it closely resembles the notion of real party in interest under Rule 17(a), inasmuch as both terms are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits. *Thus, for example, the well-settled rule*

*that a party ordinarily does not have standing to raise the constitutional rights of another person who is not joined in the suit may be thought of as merely a particular application of the real party in interest principle."* C. Wright & A. Miller, *Federal Practice And Procedure* Section 1542 at 329–30 (citations omitted) (emphasis added). As both plaintiffs and CAI agree that the crucial inquiry in this case is whether Sea Air meets the actual injury requirement of standing that parallels Fed.R.Civ.P. 17's injury requirement, I need not address the question of whether CAI should have brought the instant motion under Rule 17 rather than under standing doctrine.

**7.** No party disputes that CAS would possess standing to prosecute this action as it possesses the position of a disappointed bidder. *See General Engineering Corp. v. Virgin Islands Water And Power Authority,* 636 F.Supp. 22, 39 (D.V.I. 1985), *aff'd,* 805 F.2d 88 (3d Cir.1986).

**8.** For a thorough discussion of third party and *jus tertii* standing, *see* Monaghan, *Third Party Standing,* 84 Colum.L.Rev. 277 (1984).

outweigh any prudential rationale against third-party standing, and ... this Court has relaxed the prudential-standing limitation when such concerns are present." *Secretary of State of Maryland v. J.H. Munson Co.,* 467 U.S. 947, 956 [104 S.Ct. 2839, 2846, 81 L.Ed.2d 786] (1984). *When a special relationship exists between the plaintiff and the third party whose rights are allegedly infringed, so that the infringement of the third parties' rights restricts the plaintiff's own rights, jus tertii standing may be appropriate. See e.g. Caplin & Drysdale, Chartered v. United States,* [491 U.S. 617, 622–24,] 109 S.Ct. 2646, 2651 n. 3 [105 L.Ed.2d 528] (1989); *Eisenstadt v. Baird,* 405 U.S. 438, 443–46 [92 S.Ct. 1029, 1033–34, 31 L.Ed.2d 349] (1972).

*Id.* at 37 (emphasis added).

On the facts of the case, it appears that Sea Air possesses the special relationship with CAS necessary to invoke *jus tertii* standing. First, CAS and Sea Air possess the relationship of conditional assignor and conditional assignee. Second, the alleged infringement of CAS' rights restricts Sea Air's own rights by making the happening of the condition necessary for valid assignment impossible. Given this special relationship and the according restriction on Sea Air's rights, it makes good sense to vest Sea Air with *jus tertii* standing.

Few courts have addressed the question of whether a conditional assignment creates standing for the potential assignee. The issue has been addressed by courts in cases where a potential assignee of a franchise sought to challenge a franchisor's refusal to consent to an assignment by the franchisee. *See Don Rose Oil Co., Inc. et al. v. Lindsley et al.,* 160 Cal.App.3d 752, 206 Cal.Rptr. 670 (1984) (holding conditional assignee possessed standing where the franchisor/defendant possessed complete control over the assignment); *Superlease Rent–A–Car, Inc. v. Budget Rent–A–Car*

*of Maryland, Inc., et al.,* 1989 WL 39393 (D.D.C.1989) (relying on Restatement (Second) of Contracts Section 133 and holding conditional assignee lacked standing because the contract evidenced no intent to benefit a potential assignee). Given the similarities between this case and *Don Rose Oil,* the Court is persuaded that Sea Air possesses standing.

In *Don Rose Oil,* a petroleum franchisor refused to consent to the assignment of a petroleum franchise by a petroleum franchisee and challenged the standing of the conditional assignee/potential franchisee. In granting the conditional assignee standing, the *Don Rose Oil* court reasoned:

[a]lthough the assignment was conditional, the condition is totally within Shell's [franchisor's] control. Shell's position is tantamount to contention that because of the conditional nature of the assignment, Rose cannot sue it without its consent—a concept so outrageous that extensive and computer-assisted research of all reported cases in all 50 states and in all federal courts has not located a single case where such an argument has been advanced.

It is inconsistent for Shell to admit for purposes of the motion for summary judgment that it may not refuse consent unreasonably, but argue that a conditional assignment—subject only to Shell's consent—creates no rights in the assignee.

*Don Rose Oil,* 160 Cal.App.3d at 759–60, 206 Cal.Rptr. 670.

Here, defendant CAI essentially argues that the conditional assignment—subject only to VIPA's assent—creates no rights in Sea Air. The prudential considerations inherent in standing doctrine dictate, however, that Sea Air possesses standing to prosecute the instant action.[9]

▮▮▮▮ Even if this Court concluded that plaintiff Sea Air lacked standing under *Hospital Council of Western Pennsylva-*

---

**9.** The decision in *Superlease Rent–A–Car* is distinguishable from the case at hand. The *Superlease Rent–A–Car* court refused to follow *Don Rose Oil* because "the contracts ... contain[ed] no manifestation, express or otherwise, of an intent to benefit a potential assignee." *Id.* at 3.

Further, the *Superlease Rent–A–Car* court stated: "[a]bsent such an intended benefit, plaintiff lacks standing to sue. To hold otherwise would extend the obligations contracted for between two parties to an uncertain third party over which the obligor has no control." *Id.* at 3–4.

*nia v. City of Pittsburgh,* 949 F.2d 83, 86–87 (3d Cir.1991), the merits of plaintiff's arguments would still be addressed. When an issue of substantial public importance is before the Court and the substantive legal issues have been fully developed by the parties, a court may address an issue as ripe for judicial resolution if the decision will serve the public interest. *See General Engineering Corp. v. Virgin Islands Water And Power Authority,* 636 F.Supp. 22, 39 (D.V.I.1985), *aff'd,* 805 F.2d 88 (3d Cir. 1986) (holding that court would address claims regarding violation of bidding statute despite plaintiff's lack of standing); *Autotote Limited v. New Jersey Sports And Exposition Authority,* 85 N.J. 363, 427 A.2d 55, 57 (1981) (holding that court would address claims regarding violation of bidding procedures despite the fact that plaintiff was estopped from challenging bidding procedures). Here, a court decision will end a long controversy over the solicitation of bids for the lease of the VIPA seaplane ramps. A decision on this issue will facilitate the resumption of seaplane service between downtown Christiansted, St. Croix, downtown Charlotte Amalie, St. Thomas, downtown San Juan, Puerto Rico, downtown Roadtown, Tortola, and St. John. The parties have been litigating this action for over a year and all issues before the Court have been fully briefed. Accordingly, the Court would address the remaining issues in this case even if plaintiff Sea Air lacked standing.

## IV. CONCLUSION

For the reasons stated above, I shall deny defendant's motion to dismiss for lack of standing.

In this case, the absence of an intended third party beneficiary is not relevant to the Court's analysis. In this case, VIPA made its seaplane ramp lease decision with full knowledge that Sea Air was the party that would operate the seaplanes under the CAS bid. Therefore, the policy rationale of *Superlease Rent–A–Car* does not apply to the instant matter. Further, comment d of Section 321 of the Restatement (Second) of Contracts provides persuasive support for the conclusion that Sea Air possesses standing to prosecute the instant action. Comment d addresses the situation where a purported assignment of a right expected to arise under a contract," occurs and comment d states: "[a]s against third parties, *the purported assignment operates as a grant to the assignee of the assignor's power to enforce the right.*" Restatement (Second) of Contracts at § 321, Comment d (emphasis added).