131 Cal.Rptr.2d 193 (2003)
106 Cal.App.4th 832
COURT HOUSE PLAZA COMPANY, Plaintiff and Appellant,
v.
Dores GOODENOUGH, et al., Defendants and Respondents.
No. H023883.
Court of Appeal, Sixth District.
February 28, 2003.
Rehearing Granted March 26, 2003.
*194 Attorney for Appellant: Court House Plaza Company. Jeffery P., San Jose, Timothy D. Widman Mason M. Tse.
Attorney for the Respondents: Dores Goodenough, et al. John E. Carey, Jr., Susan A. Bush Wild, Carey & Fife, San Francisco.
RUSHING, P.J.
Plaintiff Court House Plaza Company (Court House Plaza) appeals from a judgment entered after the trial court granted a motion for summary judgment brought by defendants Dores Goodenough, Morton Rothman, Felice Shatz, and Arline Marchi (lessors). Court House Plaza had sued lessors for breach of contract, specific performance, and declaratory relief. The trial court ruled that Court House Plaza had failed to create a triable issue of fact that it was a third party beneficiary under the lease at issue, and thus had no standing to sue lessors for breach of contract and was not entitled to specific performance or declaratory relief.
On appeal Court House Plaza argues that it has standing to enforce the lease provision barring lessors from unreasonably withholding consent to assignment of the lease. We disagree, and will therefore affirm.

FACTS AND PROCEDURAL HISTORY
On March 2, 1992, lessors entered into a 10-year commercial lease with Mercer Processing, Inc., and James Mercer (Mercer or lessee) through February 28, 2002, for warehouse property at 195 Page Mill Road in Palo Alto (the premises).[1] The premises were to be used and occupied only for food processing and related operations. *195 The lease gave Mercer the option to extend the term of the lease for five years following the expiration of the initial term in 2002. The lease also included, at paragraph 12.1, the following language: "Lessee shall not voluntarily or by operation of law assign, transfer, mortgage, sublet, or otherwise transfer or encumber all or any part of Lessee's interest in this Lease or in the Premises, without Lessor's prior written consent, which Lessor shall not unreasonably withhold. Lessor shall respond to Lessee's request for consent hereunder in a timely manner and any attempted assignment, transfer, mortgage, encumbrance or subletting without such consent shall be void and shall constitute a breach of this Lease."
In July 1999, Mercer informed lessors that it had vacated most of the premises and intended to sublet a portion of it until the lease expired. Mercer requested written consent for the subleasing pursuant to paragraph 12.1 of the lease.
In October 1999, Court House Plaza[2] sent lessors an offer to lease the premises for 20 years beginning in January 2000, contingent upon the consummation of a contract with Mercer to purchase adjacent property. The adjacent property was owned by Arco Securities (Arco), a business with the same principals as Mercer Processing, Inc.[3]
In December 1999, lessors acknowledged in a letter to Mercer that they had received sublet proposals regarding three companies. One of proposed sublessees noted was Intreon Corporation, an affiliate of Rearden Steel (Intreon), but none of them were Court House Plaza. The letter requested additional information concerning the sublet proposals, including the financial stability of the proposed sublessees and a more detailed explanation of the use to which the premises would be put. The letter also indicated that, in recognition of Mercer's announced vacation of the premises, lessors were negotiating with other potential tenants to take over the premises.
In January 2000, Mercer signed an agreement[4] with Intreon to sublease the premises, subject to Intreon's ability to obtain lessors' approval. Although the agreement was entered into without notifying lessors, Intreon immediately began occupying the premises.
On or about January 21, 2000, Court House Plaza agreed to purchase the adjacent Arco property. As part of the agreement Court House Plaza gave Mercer a check for $165,000 for the right to pursue the assignment/sublease of lessors' premises. On January 27, 2000, Mercer and Court House Plaza signed a sublease for the premises and, the same day, signed an agreement for assignment and assumption of the lease. Both the sublease and assignment were conditioned upon the transfer of title to the adjacent Arco property and the written consent of lessors.
Also on January 27, 2000, Court House Plaza presented a proposed 20-year lease agreement to lessors. At the time, there were two years remaining on Mercer's lease, plus five years on the option. The proposed lease agreement said that Court House Plaza had "entered into an agreement *196 as of January 26, 2000 to take an assignment of the rights and obligations of the current lessee, Mercer Processing, Inc., under the lease dated March 2, 1992." The proposed lease agreement also said that Court House Plaza had entered into an agreement to purchase the adjacent Arco property and intended to submit a master land-development plan to the City of Palo Alto that included the premises and the adjacent Arco property, with a condominium complex planned for the premises. The proposed lease agreement stated that the current building on the premises would be demolished, and required that lessors cooperate with and affirmatively support Court House Plaza's planned development by executing applications and other required documents to public agencies and by attending public hearings.
On January 31, 2000, lessors notified Mercer that they considered the presence of Intreon on the premises a breach of the lease, and that lessors were exercising their right under the lease to terminate Mercer's right to possession of the premises and to demand its immediate surrender.
On February 9, 2000, Court House Plaza received from lessors a counterproposal to its proposed 20-year lease agreement. At a meeting on February 11, 2000, Court House Plaza informed lessors of the various objections it had to the counterproposal. Lessors informed Court House Plaza that lessors were considering another offer to lease the premises that contained many of the terms to which Court House Plaza objected. Court House Plaza indicated that it had paid Mercer for an assignment and sublease of the premises and that, according to the terms of the lease, lessors could not unreasonably withhold consent to the assignment and sublease. Court House Plaza also informed lessors that if their consent were unreasonably withheld, litigation would ensue.
On February 16, 2000, lessors notified Court House Plaza that they did not intend to further negotiate the proposed lease agreement, that they would be entering into a lease with another party, and that they would be filing an unlawful detainer action unless Mercer agreed to surrender the premises immediately. "Any purported assignment or sublease granted by Mercer Processing, Inc., to anyone heretofore is void and in violation of their lease." On February 18, 2000, Court House Plaza requested in writing that lessors provide either their written approval of the assignment or a statement of the reasons for their refusal to consent. On February 28, 2000, lessors notified Court House Plaza that lessors were refusing to consent to either the assignment or sublease of the premises by Mercer to Court House Plaza, stating several reasons for their decision.
In March 2000, lessors commenced an unlawful detainer action against Mercer. On September 29, 2000, the action ended in a summary judgment in favor of Mercer as the trial court found that the lease allowed Mercer 30 days after written notice to remedy the alleged breach and that Intreon had vacated the premises within that time. On November 1, 2000, Mercer sent lessors notice of vacation and delivery of the premises.
Court House Plaza filed its unverified complaint for breach of contract, specific performance and declaratory relief against lessors on December 27, 2000. The complaint alleged that lessors improperly terminated the lease before considering Court House Plaza's request for consent to either the sublease or assignment. The complaint alleged that, as a proposed assignee or sublessee of the lease, Court House Plaza is a third party beneficiary of the *197 provisions of paragraph 12.1 of the lease, and that lessors' refusal to grant written consent to Court House Plaza constituted a breach of that paragraph. The complaint further alleged that Court House Plaza was entitled to a decree from the court requiring lessors "reasonably to consider and to grant [Court House Plaza's] request for their written consent to the Sublease and/or the Assignment."
Lessors filed their answer to the unverified complaint on March 1, 2001, generally denying the allegations in the complaint and setting forth 12 affirmative defenses. On August 23, 2001, lessors filed their motion for summary judgment, or alternatively summary adjudication. Lessors argued that there were no triable issues of fact as to the causes of action against it in the complaint because Court House Plaza was neither a party to the lease nor a third party beneficiary of it. Court House Plaza opposed the motion. The parties argued the summary judgment motion before the trial court on September 25, 2001. The court took the matter under submission and the same day filed its order granting summary judgment. "Lessors meet [sic] their burden of showing that plaintiff cannot establish its claims. A person is not a third party beneficiary unless the contract is made expressly for the benefit of a third party. [Citation.] The lessors established that plaintiff is not a named third party beneficiary and that paragraph 12 of the lease was not intended to benefit the plaintiff. Plaintiff failed to create a triable issue of fact in this regard. [¶] As plaintiff does not have standing to bring suit for breach of contract, plaintiff also fails to show that it is entitled to specific performance and declaratory relief."

DISCUSSION
"Since a motion for summary judgment or summary adjudication involves only questions of law, the standard of review is de novo. [Citation.] First, we review the motion to determine whether the defendant has met its initial burden to establish that one or more causes of action in the complaint has no merit, by showing that one or more elements of the cause of action cannot be established, or that there is a complete defense thereto. ([Code Civ. Proc.,] § 437c, subds. (f)(1), [former] (o )(2) [now (p)(2)].) Second, if the defendant has met this initial burden, we examine whether plaintiff has shown, by setting forth specific facts, that a triable issue of fact exists as to that cause of action or defense. [Citations.]" (West Shield Investigations & Security Consultants v. Superior Court (2000) 82 Cal.App.4th 935, 946, 98 Cal.Rptr.2d 612.) "`"We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale."' [Citations.]" (Ibid.) Keeping this standard of review in mind, we consider the law governing third party beneficiaries of contracts.
"`Under California law third party beneficiaries of contracts have the right to enforce the terms of the contract under Civil Code section 1559 which provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."' [Citation.] The promise in such a situation is treated as having been made directly to the third party. [Citation.] The third party need not be identified by name. It is sufficient if the third party belongs to a class of persons for whose benefit the contract was made. [Citation.] It is not necessary, however, that the contract be exclusively for the benefit of the third party; he need not be the sole or primary beneficiary. [Citations.]
"`A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to *198 benefit that third party and such intent appears in the terms of the contract. [Citation.] . . . [¶] . . . Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered. [Citation.]' [Citation.]" (Johnson v. Superior Court (2000) 80 Cal.App.4th 1050, 1064, 95 Cal.Rptr.2d 864.)
"The party claiming to be a third party beneficiary bears the burden of proving that the contracting parties actually promised the performance which the third party beneficiary seeks. This remains largely a question of interpreting the written contract. [Citation.]" (Sessions Payroll Management, Inc. v. Noble Construction Co. (2000) 84 Cal.App.4th 671, 680, 101 Cal.Rptr.2d 127 (Sessions).) "`A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. [Citations.] As to any provision made not for his benefit but for the benefit of the contracting parties or for other third parties, he becomes an intermeddler. Permitting a third party to enforce a covenant made solely to benefit others would lead to the anomaly of granting him a bonus after his receiving all intended benefit.' [Citation.]" (Sessions, supra, 84 Cal.App.4th at p. 680, 101 Cal. Rptr.2d 127.)
In this case, lessors promised in paragraph 12.1 of the lease with Mercer that it would, among other things, "not unreasonably withhold" "written consent" to a request for assignment or sublease of Mercer's interest in the lease, and that it would "respond to Lessee's request for consent hereunder in a timely manner." Inherent in this promise is that when Mercer obtained a sublessee or assignee acceptable or satisfactory to lessors, a sublease or assignment was possible. (See Kendall v. Ernest Pestana, Inc. (1985) 40 Cal.3d 488, 503, 220 Cal.Rptr. 818, 709 P.2d 837 (Kendall).) If lessors refused to consent to a proposed assignment or sublease without having a commercially reasonable objection to the assignee or the proposed use, the proposed sublessee or assignee would be entitled to bring a declaratory relief action against lessors. (Id. at pp. 494, 506-507, 220 Cal.Rptr. 818, 709 P.2d 837.) Court House Plaza's complaint did include a claim for declaratory relief, but the trial court found the claim failed because Court House Plaza did not have standing to bring a suit for breach of contract.
For the first time at oral argument, Court House Plaza cited Don Rose Oil Co., Inc. v. Lindsley (1984) 160 Cal.App.3d 752, 206 Cal.Rptr. 670 (Rose Oil)[5] in support of its claim that it had standing to bring its lawsuit. In Rose Oil, the Shell-Gifford agreement at issue contained a provision for an assignment with Shell's consent. Rose had an agreement with Gifford that after payment of the purchase price in full, Gifford would assign the franchise to Rose. Rose filed a complaint against Shell requesting in part a declaration that Shell was obligated to consent to the conditional assignment of a portion of Gifford's contract with Shell unless Shell had just cause to withhold its consent. After the litigation commenced, Gifford made a partial assignment to Rose, "`conditioned upon receiving prior written approval of [Shell] to said partial assignment and until and unless said written approval by [Shell] is received, this partial assignment is of no *199 force and effect.'" The trial court granted summary judgment in favor of Shell on the declaratory relief cause of action. It found that Rose was not a third party beneficiary and that he was not an assignee of Gifford. Therefore, Rose had no standing to assert rights under the Shell-Gifford contract. (Id. at p. 755-756, 206 Cal.Rptr. 670.)
The appellate court agreed that Rose was not a third party beneficiary, but disagreed with the trial court's finding that Rose had no standing to enforce the Shell-Gifford contract provision regarding assignment since he was not an assignee. "The [trial] court presumably used the word `standing' as meaning real party in interest. As provided in Code of Civil Procedure section 367, `[e]very action must be prosecuted in the name of the real party in interest. . . .' It has long been established that an assignee is a real party in interest within the meaning of section 367. [Citation.][¶] Shell may be able to establish that it acted reasonably in withholding its consent. If it does, then it may be said that such a finding proves that Rose had no right to the relief prayed for. Meanwhile, however, he cannot be denied access to the courts. The rule is one of necessity. Rose had to sue Gifford in the instant action to force it to request Shell to consent to the assignment; Gifford has no interest in prosecuting an action against Shell on Rose's behalf." (Rose Oil, supra, 160 Cal.App.3d at p. 759, 206 Cal.Rptr. 670.) "Although the assignment was conditional, the condition is totally within Shell's control. Shell's position is tantamount to contention that because of the conditional nature of the assignment, Rose cannot sue it without its consent. . . . [¶] It is inconsistent of Shell to admit for the purposes of the motion for summary judgment that it may not refuse consent unreasonably, but argue that a conditional assignment  subject only to Shell's consent  creates no rights in the assignee." (Id. at pp. 759-760, 206 Cal.Rptr. 670.)
Although Court House Plaza was not a third-party beneficiary of the lease provision barring lessors from unreasonably withholding consent to assignment of the lease, it was entitled as a proposed assignee to bring a declaratory relief action against lessors if lessors unreasonably refused their consent. (Kendall, supra, 40 Cal.3d at pp. 494, 506-507, 220 Cal.Rptr. 818, 709 P.2d 837; Rose Oil, supra, 160 Cal.App.3d at pp. 759-760, 206 Cal.Rptr. 670.)
But our analysis does not end there. We must determine whether Court House Plaza carried its burden of showing in this case that it was a proposed assignee when it submitted the January 2000 proposed lease agreement to lessors. We believe it did not. We see no indication that lessors and Mercer actually promised in paragraph 12.1 of the lease the performance that Court House Plaza seeks to enforce here. This is because the January 2000 proposed lease agreement that Court House Plaza presented to lessors was not a proposed sublease or assignment of the lease with Mercer.
When a lessee assigns a leasehold, the transfer terminates the lessee's privity of estate with the lessor but it does not affect privity of contract. The lessee remains liable to the lessor absent an express release. If the assignee takes possession of the premises but no more, the assignee is bound by all lease covenants that run with the land. If, however, the assignee expressly agrees with the lessee to assume the obligations of the lease, the assumption agreement creates a new contract between the lessor and assignee, enforceable by the lessor as a third party beneficiary, regardless of whether the lessor was a party to the assumption agreement. As a consequence, the assignee is *200 required to perform all covenants of the lease for the remainder of its term, absent a release by the lessor. (Vallely Investments v. BancAmerica Commercial Corp. (2001) 88 Cal.App.4th 816, 822, 106 Cal. Rptr.2d 689.) In contrast to an assignment, a sublease is a transfer of only a portion of the lessee's estate, with the lessee retaining a reversionary interest. A sublessee is not directly liable to the landlord as the sublease creates a new estate, and is a contract between the lessee and the sublessee. (Id. at p. 823, 106 Cal. Rptr.2d 689.)
The undisputed facts are that Mercer submitted three proposed sublessees to lessors, none of whom were Court House Plaza. Mercer later agreed to sublease the premises to Intreon, without notice to lessors, and then assigned its leasehold interest to Court House Plaza. Mercer and Court House Plaza did enter into an agreement for assignment and assumption of the lease. Court House Plaza did not submit a proposed assignment agreement to lessors for their approval, however. Instead it submitted a proposed lease agreement to lessors that had no relationship to lessors' lease with Mercer. That Court House Plaza paid Mercer a substantial sum of money for the privilege of submitting a proposed sublease/assignment to lessors is not controlling. What is controlling is the terms of the proposed lease agreement that Court House Plaza submitted to lessors.
Lessors' lease with Mercer included provisions limiting the use of the existing building on the premises for commercial operations, ending in February 2002 with an option for an additional five years. Court House Plaza's January 2000 proposed lease agreement did not offer to assume Mercer's rights and obligations to perform all covenants of the March 2, 1992 lease, as a proposed assignment would. Instead, Court House Plaza's proposed lease agreement included provisions allowing Court House Plaza to demolish the existing commercial building on the premises and to build a number of residential units, and was for a term that would extend to some 13 years past the expiration of the original lease and five-year option. The proposed lease agreement also included provisions listing additional obligations for lessors, requiring lessors to take affirmative steps to support Court House Plaza's planned development, including executing applications and other documents required by public agencies and attending public hearings. Not only were these provisions not included in lessors' lease with Mercer, but they did not involve foreseeable uses implied in that lease.
Court House Plaza was entitled to seek declaratory relief had lessors unreasonably refused to consent to Mercer's proposed assignment of the lease to Court House Plaza. Court House Plaza did not submit a proposed assignment of the lease to lessors for their approval, however. Court House Plaza submitted a proposed lease agreement to lessors that was neither a proposed sublease nor a proposed assignment of Mercer's lease. By submitting such a proposed lease agreement, Court House Plaza was not acting as a proposed assignee under paragraph 12.1 of the lease. Rather, Court House Plaza became an intermeddler. As an intermeddler, Court House Plaza was no more entitled to have lessors consider and approve the January 2000 proposed lease agreement than was any other third party seeking to take over the premises.
As a matter of law, Court House Plaza was not acting as a proposed assignee under paragraph 12.1 of the lease when it submitted for lessors' approval the January 2000 proposed lease agreement, and therefore Court House Plaza was not entitled *201 to sue for breach of the lease, specific performance, or declaratory relief. The trial court properly granted lessors' motion for summary judgment.

DISPOSITION
The judgment is affirmed.
We Concur: PREMO and ELIA, JJ.
NOTES
[1] The lease variously refers to the property as being in Palo Alto and in San Mateo, which is in San Mateo County, but the parties do not dispute here that the property is in Palo Alto.
[2] The proposal was sent on behalf of Harold C. Hohbach. Hohbach is president of Hohbach Enterprises, Inc., which is Court House Plaza's general partner.
[3] The address of the adjacent Arco property was 2865 Park Boulevarrd.
[4] The letter agreement was designated as an "expression of intent."
[5] We note that Rose Oil was decided prior to Kendall, but is consistent with it.